JAMES H. CARRINGTON et al., Respondents, v. CHARLES E.
WARD et al., Appellants.

One, who has purchased from the general owner goods pledged for
advances, with knowledge or notice of the lien of the pledgee, and who
receives the goods from the latter with notice of his claim of a lien
thereon for a specific amount, takes them with the obligation to pay
the lien, and in an action therefor, cannot offset a claim against the
pledgor.

Where goods pledged have been disposed of by the pledgee, who, how-
ever, substitutes in their place and delivers to a purchaser from the
pledgor, upon the order of the latter, other goods of the same kind,
quality and value, which are accepted by the purchaser, the latter cannot
take advantage of the wrong of the pledgee ; and it is no defense to an
action by the pledgee to recover the amount of his lien upon the goods.

In an action to recover the amount of an alleged lien upon seventy-five
barrels of oil delivered by plaintiffs, the pledgees, to defendants, pur-
chasers from the pledgor, which lien was claimed to be at the rate of
fifteen dollars per barrel, it appeared that the whole amount of oil
pledged was 1,169 barrels, plaintiffs had previously delivered 671 bar-
rels receiving thereon fifteen dollars per barrel. Defendants offered evi-
dence to the effect that the whole amount of the lien was not to exceed
in gross $10,000, with $2.50 per barrel for freight. The evidence was
rejected ; held, no error ; that the evidence was immaterial as, if the fact
sought to be proved had been established it would not have shown that
plaintiff had not a lien at the rate of fifteen dollars per barrel, until the
amount specified had been paid, and the amount paid with the charge
upon the seventy-five barrels would not extinguish the lien.

Defendants offered evidence to the effect that their agreement with the
pledgor was different from the terms of his order upon plaintiffs ; this
was rejected ; held, no error ; that whatever agreement was made, if
unknown to plaintiff, he was not affected thereby.

Thayer v. Dwight (104 Mass., 254) ; Nottebohm v. Maas (2 Robt., 249)
distinguished.

(Argued November 23, 1877 ; decided December 4, 1877.)

APPEAL from judgment of the General Term of the
Superior Court of the city of New York, affirming a judg-
ment in favor of plaintiffs, entered upon a verdict. (Reported
below, 10 J. & S., 571.)

This action was brought to recover the amount of an
alleged lien upon seventy-five barrels of oil, part of 1,169
barrels sold by one Compton to defendants, which oil was

then held in storage by plaintiffs, subject to a lien as claimed of fifteen dollars per barrel for advances. Compton gave an order directed to plaintiffs requiring them to deliver the oil to defendants, collecting thereon fifteen dollars per barrel, stating he would be responsible for any credit given to defendants not exceeding $5,000. Defendants gave in evidence a letter from Compton to them, in which he states that he has given plaintiffs orders for the oil, and had made an arrangement for a credit of from $2,000 to $3,000 on account " of *the* fifteen dollars per barrel." Pursuant to the order, the plaintiffs delivered to the defendants 671 barrels upon which defendants paid the fifteen dollars per barrel. Thereafter, plaintiffs delivered upon defendants' orders fifty barrels at one time and twenty-five at another, each delivery being accompanied by a bill or invoice therefor, charging fifteen dollars per barrel. After the delivery of the second lot, defendants wrote to plaintiffs returning the invoices, and stating that Mr. Compton, being indebted to them, they should credit his account with the oil, and were ready to pay to whomsoever he might order the balance due.

Further facts appear in the opinion.

The court directed a verdict for the plaintiffs, to which defendants' counsel duly excepted.

*Thomas H. Hubbard*, for appellants. Habit, custom or usage may be resorted to, for the purpose of construing contracts, but they do not make contracts. (2 Pars. on Con., 535, part 2, chap. 1, § 9.) The dealings between plaintiffs and defendants did not constitute usage. (*Higgins* v. *Moore*, 34 N. Y., 417, 422, 425.) It is only where a purchaser of pledged property has notice of the pledgee's lien, and agrees to pay the price to the pledgee, that he cannot offset against the pledgee's claim by showing that he has paid, or is a creditor of the pledgor. (*Nottebohm* v. *Maas*, 3 Robt., 249.)

*Thos. G. Ritch*, for respondents. Plaintiffs' lien having been made known to defendants, they took the oil subject to

it and were estopped from denying it. (*Nottebohm* v. *Maas*, 3 Robt., 249; *White* v. *Jandon*, 9 Bosw., 415; *Hale* v. *Omaha Nat. Bk.*, 49 N. Y., 626–634.) Defendants' acceptance of the oil with the accompanying bill bound them to pay for it. (*Philip* v. *Gallant*, 62 N. Y., 257; *Quincey* v. *White*, 63 id., 370.)

FOLGER, J. It is conceded by defendants that there was sufficient evidence to justify a finding of a referee, or a verdict of a jury, in favor of the plaintiffs. It is contended by them, however, that the testimony to that end was not undisputed, and that there was such conflict in it, as that they were entitled to go to the jury, according to the requests made by them. It is, therefore, to be inquired, whether there was such undisputed or undisputable evidence as would have called upon the court to have set aside a verdict as against evidence, had a jury found in favor of the defendants.

It is not contended by them, but that on the evidence received, the plaintiffs had a lien as against Compton, upon the merchandise, to the extent claimed by them. It cannot be disputed, the evidence is clear and all one side, that the defendants knew, or had notice or were put upon inquiry, of the existence of a lien. The defendants knew, beyond dispute, that the possession of the goods was in the plaintiffs. This was *prima facie* evidence of ownership, and certainly put the defendants upon inquiry of how far short of ownership was the plaintiffs' right to it. It seems that the agreement between the defendants and Compton was made in November, 1870. It was in writing. The defendant, Charles E. Ward, so testifies. It states that Compton had made an agreement with the plaintiffs to give to the defendants a credit " on the money, on account of the fifteen dollars per barrel." This paper is put in evidence by the defendants. The principal defendant testifies that he had it in his possession on the morning after it was written. On its face, it advised him that there was a sum of fifteen dollars per barrel, which was to be paid in cash, or at the end of a term of credit. It also

advised him, that this was not an indefinite and uncertain sum ; it says " *the* fifteen dollars per barrel."

The use of the definite article, " the," in speaking of fifteen dollars per barrel, grounds an inference too strong to be resisted; that the defendants had notice of a lien, claim, or right of the plaintiffs upon the merchandise to that amount. This is further fortified by the invoices sent by the plaintiffs with the two parcels of oil sent by them to the defendants, in each of which the defendants have notice of the same claim. It is further fortified by the undisputed fact, that before the delivery of the oil in question here, there had been a delivery and acceptance of 671 barrels of the same larger quantity, and that on all of those 671 barrels the defendants had paid to the plaintiffs the sum of fifteen dollars per barrel. Nor does the force of this fact rest upon the existence of testimony showing an agreement, from habit, custom or usage. It tends to show that the defendants had knowledge, or notice, of the right of the plaintiffs to receive from any vendee of Compton fifteen dollars per barrel, before they could be required to make delivery or surrender possession.

Thus we have, beyond dispute, the existence of the lien, and the defendants' knowledge or binding notice thereof, or notice enough to obligate inquiry. It is beyond dispute that the plaintiffs never gave up their lien, or did anything to lead the defendants to suppose that they meant to, or to induce action in the defendants in reliance upon a belief that the plaintiffs meant to relinquish it. The act of delivery of the oil to the defendants was accompanied by an invoice, which, in its contents, was a written claim for the fifteen dollars per barrel. The defendants took the oil with that claim. They were bound to make inquiry, or to refuse and return the oil, or to take it with the obligation on their part to make payment of that sum at a proper time. So that it does plainly appear that there was evidence in the case, drawn from undisputed testimony, which demanded from a jury a verdict for the plaintiffs. It was not disputed by testimony

directly in conflict with it, given upon the same alleged facts, nor indirectly in conflict with it, given upon other issues, yet impinging upon those facts. The direction to the jury to find a verdict for the plaintiffs was, therefore, correct.

It remains to be seen whether there was anything in the conduct of the trial which was erroneous. It is claimed that the court erred in excluding testimony offered by the defendants and in receiving testimony from the plaintiffs. It is claimed that there was error in admitting in evidence the order signed by Compton, directing the delivery of the oil to defendants on receipt of fifteen dollars per barrel. But when that order was admitted, there was testimony tending to show that it came from Compton to the plaintiffs, by the hands of the defendant's cartman, who, for the purpose, was their agent. It is true, that that testimony was of the impression of one of the plaintiffs to that effect. A witness may testify to impressions (*Snell* v. *Moses*, 1 J. R., 96, 99–101; *sed vide, Cutler* v. *Carpenter*, 1 Cow., 81); and, moreover, the witness said that by impressions he meant his best recollection. And here it may be well to notice, that the defendants, in subdivision *b* of their second point, fail to notice the fact resting upon undisputed testimony that the date to the order (Exhibit No. 1), was erroneous, and that the birth of the agreement, stated in that paper, in fact preceded the delivery to the defendants of the oil in question. It is true, that later in the trial, testimony was given that rendered it doubtful if the defendants ever saw that paper. But that was after it had been received in evidence.

It is claimed that the testimony of the defendant Ward tended to show that the seventy-five barrels of oil in question were not a part of the 1,169 barrels upon which the plaintiffs had a lien. I am not able to assent to this as a result of legal importance in this case. That testimony tends to show only that no part of the identical 1,169 barrels of oil, which Compton pledged, were at a certain time, after the plaintiffs received them, still in the possession or control of the plaintiffs. It is to be inferred, if this were so, that they had been

used by the plaintiffs in the course of their business, and disposed of not on Compton's account, with the purpose of substituting other oil of the same quality and value, when a sale should afterwards be made on his account. Such substitution, it is shown by the testimony, was made, if there was ever a use of them otherwise than for him. That practice is not to be justified, or to pass without moral rebuke. But as between the parties to this action, if the order for oil on Compton's account was filled to the satisfaction of his customer, the latter cannot take advantage of the improper practices of Compton's factor or pledgee.

It is claimed that the defendants were improperly limited in their cross-examination of the witness, James H. Carrington. The extent and range of a cross-examination is much within the discretion of a trial court. It must be some question pointing to a material matter, which, if rejected, makes ground for error. In this view, it seems that it was proper to deny the questions put to show whether a residue of the oil had been lost by leakage. It was shown that enough had not so gone to furnish all that had been sold and delivered to the defendants, and yet leave some over in store. It could not matter in this case how the portion not then accounted for had disappeared; nor was it material to show where the seventy-five barrels were stored just previous to the delivery. The only end to be got was to show that they were not a part of the original 1,169. As we have stated, that fact was not material upon the issue tried in this case. The lien of the plaintiffs applied to the original number of barrels. If the plaintiffs had disposed of some of them without satisfying that lien, and without injury to Compton, and had replaced them with like oil, satisfactory to the defendants, and such as made a good delivery in performance of Compton's contract with them, the defendants may not complain.

The defendants put certain questions to the plaintiff, James H. Carrington, while a witness, for the purpose of showing that his lien, at the rate of fifteen dollars per barrel, was not to exceed in the gross $10,000, and $2.50 per barrel for

freight, and was in fact less than at the rate of fifteen dollars per barrel for the whole 1,169 barrels. These questions were not admitted by the court, and therein the court did not err. Had the witness been required to answer, and had his answer established the truth of the fact indicated by the question, it would not have varied the position of the parties. It would not have shown that the plaintiffs were not to have a lien at the rate of fifteen dollars per barrel, until their advances and other outlay for Compton were paid. A simple calculation shows that the plaintiffs having sold but 671 barrels, and received thereon the fifteen dollars per barrel, had not exhausted the amount of their lien, and that the fifteen dollars per barrel on the seventy-five barrels in question would not exhaust it. If the facts were as the question indicated, the amount of the plaintiffs' lien on the oil, at fifteen dollars for advance up to $10,000, and $2.50 for freight on each barrel of 1,169 barrels, would be $12,922.50. They had sold 671 barrels, on which they had received fifteen dollars per barrel, in gross $10,065, and still could claim on the oil left in their keeping $2,857.50 more. The seventy-five barrels, at fifteen dollars per barrel, would yield $1,125, short of enough to extinguish their lien ; short of which, also, was the amount of the recovery in this case, even with the addition of the interest.

There was a paper offered in evidence, to the end of showing an agreement between the plaintiffs and Compton, different from that proved by the plaintiffs. It does not appear in the appeal book, nor is any further intimation given of its contents, purport, or effect. We cannot give a judgment upon its materiality.

It was not error to exclude testimony offered to show that the agreement of the defendants with Compton was different from the terms of the order upon the plaintiffs, signed by Compton. Whatever that agreement was, if it was unknown to the plaintiffs, clearly it could not affect their rights. The same is to be said of the testimony offered that the defendants made advances to Compton. *Thayer* v. *Dwight* (104

Mass., 254) is cited. That case is not analogous. There the pledgee of goods permitted the pledgor to sell them in his own name, and made delivery to the vendee upon the order of the pledgor, with no claim or intimation of a lien, the vendee being without knowledge or faintest notice of the pledge. Here the vendee, had from the beginning, notice that the pledgor had not an unlimited right to sell; had notice, indeed, that the goods were held in pledge, and was put upon inquiry for the amount for which they were pledged.

*Nottebohm* v. *Maas* (2 Robt., 249) is also cited, as if it held that an agreement by the vendee to make payment of the price to the pledgee was an essential element in the right of the pledgee to recover against the vendee. That fact was in that case, but it was not the pivot of the judgment, nor much regarded.

The judgment appealed from should be affirmed.

All concur.

Judgment affirmed.