DONNELL, LAWSON & SIMPSON v. JACOB F. WYCKOFF.

1. In an action by the pledgee for the debt for which the pledge was made, the defendant may set up a wrongful conversion of the pledge by way of a defence and be allowed the value of the pledge as payment of the debt *pro tanto*.

2. Stock of a mining corporation was pledged as collateral security for a loan. The company, by legislative authority, afterwards reduced its capital and proportionately reduced the nominal value of the shares of its capital stock. *Held*, that the surrender by the pledgee of the original certificate of stock and the acceptance of a new certificate for the same number of shares was not a wrongful conversion.

On rule to show cause.

Argued at June Term, 1886, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff, *Edward M. Colie.*

For the defendant, *Frank Bergen.*

The opinion of the court was delivered by

DEPUE, J. This suit was brought upon a promissory note, dated September 16th, 1881, for the sum of $7,500, payable to Donnell, Lawson & Simpson, the plaintiffs, on demand. The consideration of the note was money loaned by the plaintiffs to the defendant. At the time of the loan, the defendant deposited with the plaintiffs a certificate for twenty-five hundred shares of the capital stock of the Moulton Mining Company, in pledge, as collateral security. The corporation was

Donnell v. Wyckoff.

organized under the laws of the Territory of Utah, with capital stock to the amount of $10,000,000. The property of the corporation, its mine and all its interests were in Montana. After the pledge of stock to the plaintiffs, the stockholders of the company abandoned the original incorporation, and by legal proceedings under the laws of Montana, became a new corporation, with a capital stock of only $2,000,000, divided into the same number of shares, the nominal value of each share of stock in the original company being $25 and in the new company $5. The defence in the case was made upon . the conduct of the plaintiffs in dealing with the collaterals.

The first consideration is whether, in an action on the note, a defence of this character is competent under any circumstances. It is settled that the pledgee may bring an action for the debt without producing or accounting for the pledge. By the contract of bailment, the property pledged is delivered to the pledgee as security for the payment of the debt. Judgment for the debt is neither payment nor extinguishment. The debt remains in a new form, and until the debt is paid the pledgor, under the terms of the bailment, has no right to have the pledge given up to him. *Scott* v. *Parker*, 1 *Q. B.* 809; *Jones on Pledges*, § 593.

The principle above stated does not cover the defence set up in this case. The defendant's contention is that the plaintiffs have destroyed the bailment by the wrongful conversion, out and out, of the property pledged. May not a defence of this nature and scope be made by the pledgor in the action for the recovery of the debt?

Upon a pledge of property as security for a debt, the pledgee has only a special property. The general property is in the pledgor, subject to the rights of the pledgee. *Story on Bail.,* §§ 287–303; *Jones on Pledges*, § 7. Incident to the bailment and possession by the bailee under it, the duty is laid upon the pledgee to keep the property safely and to restore it to the bailor when the debt is paid. If the property is injured or allowed to deteriorate while in the possession of the bailee through his neglect or default, he will be subject to an action

for damages. If it be.lost or destroyed by his fault, or be converted by him, he will be liable to an action of trover or a special action on the case for the value of the pledge. If the pledgor sues in trover for a wrongful conversion, the debt being unpaid, the pledgee may have the amount of his debt recouped in the damages. *Story on Bail.*, § 349; *Sedg. on Dam. (6th ed.)* 601, [481], *and notes; Schouler on Bail.*, 203; *Longstreet* v. *Phile*, 10 *Vroom* 63, 68; *Jarvis* v. *Rogers*, 15 *Mass.* 389; *Fowler* v. *Gilman*, 13 *Metc.* 267; *Work* v. *Bennett*, 70 *Penna. St.* 484; *Parish* v. *Wheeler*, 22 *N. Y.* 494; *Johnson* v. *Stear*, 15 *C. B.* (*N. S.*) 330–334; *Chinery* v. *Viall*, 5 *H. & N.* 288.

The allowance of the unpaid debt in abatement of damages, in an action against the pledgee for a wrongful conversion, does not rest upon recoupment, strictly speaking, but is made upon the principle of avoiding circuity of action. *Sedg. on Dam.* 601, *note; Schouler on Bail.*, 227; *Longstreet* v. *Phile*, 10 *Vroom* 69. The principle applies with equal force to an action by the pledgee for the debt where the pledge has been converted out and out by the pledgee. In an action for the debt, the court, in *Cass* v. *Higenbotam*, 27 *Hun* 406, recognized the wrongful conversion of the pledge as a legitimate counter-claim. In *Stearns* v. *Marsh*, 4 *Denio* 227, the value of the property pledged and unlawfully disposed of was allowed in an action for the debt under a plea of *non assumpsit*, and in *Carrington* v. *Ward*, 71 *N. Y.* 360, it was assumed that such a defence was competent. The loan of the money and pledge of the stock as collateral security are parts of the same transaction, and the value of the property wrongfully converted and the amount of the debt can both be as readily ascertained in the action by the pledgee for the debt, as in the action by the pledgor for the conversion of the pledge. In view of the fact that transactions of borrowing money on collateral securities have become common, and in large amounts, and that the securities pledged are usually such as are negotiable, and the pledge effected by blank endorsements, public policy requires the protection of the borrower from the conse-

Donnell v. Wyckoff.

·quence of the wrongful disposition of the property pledged, as far as is consistent with rules of law and the forms of action. To deprive the creditor of all remedy for his debt, because by inadvertence he has made an unlawful disposition of the pledge—it may be of less value than the debt—would be unjust. Equally unjust would it be to compel the debtor to pay the debt in full in the face of the wrongful disposition of the property pledged, and then put him to an action of trover against the same party, who may be insolvent and incapable of· satisfying the judgment against him. The injustice that might be done to the pledgee in an action of trover for the wrongful conversion of the pledge—the debt for which it was pledged being unpaid—is obviated by allowing the amount of the debt in abatement of damages, on the theory that to that extent the property pledged has been applied to the pledgor's use. On the same principle the value of the pledge wrongfully converted may be treated as payment *pro tanto*, ·or in full in an action for the debt.

The defence sought to be made is a defence capable of being ·made in ·this case. The merits of that defence remain for ·consideration. The stock pledged stood on the books of the ·corporation in the name of the defendant. It was pledged to ·the plaintiffs by the delivery of the certificate of stock, with an endorsement of transfer in blank, signed by the defendant. The pledge included the dividends that might be made upon the stock, as well as the shares of stock. *Jones on Pledges*, § 398. The transfer of the stock on the company's books out of the defendant's name was contemplated by the endorsement ·of·transfer on the back of the certificate. An actual transfer ·of the stock on the company's books was necessary to enable ·the plaintiffs to collect and receive dividends, if not to protect ·the stock from the defendant's other creditors. The proof is that the transfer was made to enable the plaintiffs to receive dividends, and upon the transfer on the books dividends to ·the amount of $1250 were received, which are credited on the note.

The transfer on the company's books effected no change of

title.   The title passed as between the parties by the delivery
of the certificate with the endorsement of transfer.   The sur-
render of the original certificate and the acceptance of a new
certificate in the plaintiffs' name, were not in violation of the
bailment.   They were acts necessary to effectuate the purpose
of the bailment.   *Hubbell* v. *Drexel,* 21 *Am. Law Reg.* (*N. S.*)
452, *and note.*

But it is insisted that the acceptance of the new certificate
under the re-organization of the company was a wrongful act
which was equivalent to a wrongful conversion of the stock
originally pledged.   The original certificate was for two thou-
sand five hundred shares of stock, at the par value of $25 a
share.   The actual value was $4 a share.   The nominal capi-
tal of the company, at the time the certificate was issued, was
$10,000,000.   In the re-organization the company reduced its
nominal capital to $2,000,000 and the par value of its stock
to $5 a share.   The re-organization of the company effected no
change except in the reduction of its nominal capital.   The
reorganization was under the same corporate name.   The bus-
iness of the company was left under the same management,
and its property and assets remained the same.   The reduction
in the nominal value of the shares of stock was in proportion
to the reduction in the nominal capital of the company.   The
re-organization was made under competent legislative authority,
and, for aught that appears, was prompted wholly by pru-
dential motives.   At all events, the plaintiffs took no part in
the re-organization.   It was accomplished *in invitum,* so far as
they were concerned.   The first certificate issued to them was
after the re-organization was effected.   A share of the-stock of a
corporation is simply the title of the shareholder to his pro-
portion of the corporate property, and the certificate of stock
is nothing else than evidence of the shareholder's right to a
share of the net produce of all the property of the company.
*Graydon's Ex'rs* v. *Graydon,* 8 *C. E. Green* 229 ; *Boone on
Corp.,* § 105.   The new certificate accepted by the plaintiffs is
for the same number of shares as the original certificate, and
represents the same proportional share of the company's

property and assets.   As a representative of actual value the new certificate is an exact equivalent of the certificate which the defendant delivered to the plaintiffs.

The defence is without merits, and the judge's finding for the plaintiffs for the full amount of the note, less the dividends received, was correct.   The rule to show cause should be discharged.