### WAGNER v. KOHN.

(Circuit Court of Appeals, Second Circuit. July 6, 1915.)

No. 293.

1. EVIDENCE ⬅➡441—PAROL EVIDENCE—VARYING NOTE.
     As between the maker of a collateral note and the payee thereof, the maker is liable on the note according to its terms, which cannot be overcome by a parol understanding that a third person would pay it.
     [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. ⬅➡441.]

2. BILLS AND NOTES ⬅➡135—COLLATERAL NOTE—CONVERSION BY MAKER—RIGHTS AND LIABILITIES OF PARTIES.
     Where a note recited a promise to pay a specified sum, with interest, and a deposit with the payee as collateral of certain bonds of a company,

and it appeared that the money for which the note was given was money advanced by the payee to enable the company to discharge its debt to the maker, and the understanding between the company and the maker was that the company would pay the note, and the payee exchanged the bonds for other bonds, and a receiver of the payee sold the other bonds for more than the amount of the note, the maker was entitled to have the proceeds used for the payment of the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 332; Dec. Dig. ☞135.]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here on writ of error to review a judgment of the United States District Court for the Southern District of New York, entered on January 15, 1915, in favor of the defendant, and adjudging that he recover costs in the sum of $69.35. .

Barber, Watson & Gibboney, of New York City (Stuart G. Gibboney and George M. Burditt, both of New York City, of counsel), for plaintiff in error.

McKennell & Appell, of New York City (Thomas Abbott McKennell and Alfred H. Appell, both of New York City, of counsel), for defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This is an action brought by plaintiff as receiver of the Mt. Vernon National Bank to recover on a note made to the bank by the defendant. At the time the note was given and as a part of the transaction there was deposited as collateral with the bank certain bonds issued by the Westchester County Brewery Company and which had a face value of $4,000. It appears that the Westchester County Brewery Company, hereinafter referred to as the Company, was indebted to the defendant in the sum of $6,000, secured by a mortgage on its property. This mortgage was found to interfere with the plan of the Company to put out a bond issue, and defendant was asked to discharge it of record, and it was so discharged in August, 1910, and at that time it paid $3,000, one-half the amount due. In October following defendant was pressing for payment of the balance. The Company had $1,000 available for that purpose, and applied to the bank to borrow $2,000 additional. The president of the bank advised the Company that the bank already "had all the loaning paper the bank could stand under the Westchester County Brewery's name," and it was agreed to ask defendant to sign a collateral note for $2,000, which the cashier was to discount. It was also agreed between the bank and the Company that the bonds of the latter to the value of $4,000 would be given to the cashier as collateral to secure the payment of the note, and at that interview the president of the bank handed the cashier bonds to the amount named to be used for the purpose. The evidence shows that the president of the bank was also the money adviser of the Company, and was to float the bond issue of the latter, and had at the time some of the bonds in his possession with authority to sell. The defendant assented to this

arrangement, executed the collateral note, and received the cashier's check drawn to, his order. The note and bonds were put into an envelope and left with the bank.

The note made by defendant is dated October 25, 1910. It recites that the undersigned promises to pay on demand to the bank or its order $2,000, with interest at the rate of 6 per cent. per annum, "having deposited with the said bank as collateral security for the payment of this and any other liability or liabilities of the undersigned, or of the guarantors hereof, * * * the following property, viz.: Four thousand dollars ($4,000) par value first mortgage bonds Westchester County Brewery, * * * and the undersigned also hereby gives to the holder hereof a lien for the amount of all the said liabilities upon all the property or securities," etc. It also empowers the holder, upon nonpayment "of any of the liabilities above mentioned when due," to sell at public or private sale the said securities or any part thereof.

[1] There was testimony to show that it was understood that the note was to be paid by the Company. But as between the plaintiff and the defendant there can be no question but that defendant was liable on the note according to its terms and that the written agreement could not be overcome by a parol understanding that the Company would pay it.

[2] The bonds deposited were Nos. 591–600, being 10 in number and of the par value of $100 each, and Nos. 41–46, being 6 in number and of the par value of $500 each. On December 30, 1910, these bonds, without the knowledge or consent of defendant, were delivered by the president of the bank to the Empire Trust Company, the trustee under the mortgage which secured them, and were exchanged for bonds of a second issue of equal par value; the bonds of the first issue being canceled. The authorized amount of the first issue was $125,000, and of the second issue $200,000. The substituted bonds came into the possession of the receiver of the bank, a receiver having been appointed in April, 1911, who sold them prior to the commencement of this action and realized 66⅔ of the par value, or more than the amount of the note.

These being the facts as disclosed upon the record, the defendant insists that the action on the note cannot be maintained against him. Upon the close of the case in the court below his counsel moved to dismiss the complaint, upon the ground that the plaintiff had not produced the security mentioned in the note, and that there was no proof of any tender of the security contemporaneous with the demand for payment, nor at any other time, and upon the further ground that it affirmatively appeared that the securities pledged for the note had been converted by the bank, and that they were in value sufficient to extinguish the liability on the note. Counsel for the plaintiff asked the court to direct a verdict for the plaintiff for the full amount of the note. It was agreed that the plaintiff made out a prima facie case by the production of the note and proof of payment of the recited consideration to defendant.

If the note had been an ordinary note this argument on behalf of plaintiff would have been sound. But the note is not an ordinary one.

It is a collateral note, and that fact appears by its recital, and the testimony conclusively establishes that the collateral was in fact deposited. The evidence shows that before this action was brought the collateral was surrendered by the bank without defendant's knowledge and canceled. The substituted bonds were likewise, before action and without defendant's knowledge, sold by the plaintiff or by his predecessor in the receivership, and he did not possess them at the time of the trial. In the absence of a special agreement to resort first to the collateral, the plaintiff as holder of the note was under no obligation to realize upon the collateral before suing upon the note. Lewis v. United States, 92 U. S. 618, 23 L. Ed. 513 (1875); De Cordova v. Barnum, 130 N. Y. 615, 617, 29 N. E. 1099, 27 Am. St. Rep. 538 (1892); Jenkins v. Conklin, 146 App. Div. 302, 303, 130 N. Y. Supp. 778 (1911). Whether he could obtain payment of the note without making tender of the collateral may be open to question. Jones, in his work on Collateral Securities (section 593), declares that the return of the pledge is not a condition to be performed before or concurrently with the payment of the debt secured. In Lawton v. Newland, 2 Starkie, 72 (1817), Lord Ellenborough held that plaintiff might recover in assumpsit against the defendant for money loaned without having first delivered up or offered to deliver up the gun which he held in pledge. The defendant, he said, might enforce the return by bringing an action of trover. And in Donnell v. Wyckoff, 49 N. J. Law, 48, 7 Atl. 672 (1886), the court said:

"It is settled that the pledgee may bring an action for the debt without producing or accounting for the pledge. By the contract of bailment, the property pledged is delivered to the pledgee as security for the payment of the debt. Judgment for the debt is neither payment nor extinguishment. The debt remains in a new form, and until the debt is paid the pledgor, under the terms of the bailment, has no right to have the pledge given up to him."

But the rule laid down in Colebrook on Collateral Securities, § 106, is as follows:

"The pledgee of negotiable collateral paper, although entitled upon default to enforce payment of the principal obligations and to retain such collateral securities until payment, should be ready in such action, in order to entitle himself to judgment, to produce the negotiable collateral securities, or account satisfactorily for their nonproduction," etc.

And it has been held in New York that a refusal to return the collateral is a justification for refusing to pay the debt secured. In Ocean National Bank of N. J. v. Fant, 50 N. Y. 474 (1872), it appeared that the maker of the note, when payment was requested, stated that he was willing to pay on production of the collaterals. The collaterals were not produced, and the maker declined to pay, and the action was brought. The court held that an agreement to restore the collaterals on payment of the note was to be implied and that the acts should be simultaneous:

"The right of the maker to receive these collaterals when he should pay the note stood upon the same footing as his right to the surrender of the note itself: and, laying out of view special cases of lost notes, it is well settled that, to constitute a valid demand, the note must be produced and ready to be surrendered on payment. * * * It would be most unreasonable to re-

quire the maker to pay such a note in the absence of the collaterals, which frequently consist of negotiable securities, and to trust to his legal remedies against the holder to recover them."

And see Schlesinger v. Wise, 100 App. Div. 587, 94 N. Y. Supp. 718, 720 (1905).

It is not now necessary to decide which of these conflicting theories is in our opinion correct. The defendant claims that as the plaintiff has sold the collateral, or the bonds substituted for them, and has realized an amount in excess of the amount due on the note, this constitutes a good defense to this action on the note. On the conversion of the collateral the pledgor was entitled to sue the pledgee in trover, and in such an action, the debt being unpaid, the pledgee is entitled to have the amount of the debt deducted from the damages. Sedg. on Damages, 601, note. But, the collateral having been converted, if the pledgee sues the pledgor, should not the same principle be applied, and the value of the collateral be deducted from the amount of the debt?

In Brown v. First National Bank, 112 Fed. 901, 50 C. C. A. 602, 56 L. R. A. 876 (1902), the facts were these: The payee of a note held as collateral security a judgment which the maker of the note held by assignment and had pledged to the payee by way of security; the payee of the note, without the knowledge of the maker or the sureties, released the judgment; an action on the note was subsequently brought by the payee against the maker and sureties; the note was for the sum of $3,366.75, and the judgment which was released was the sole incumbrance on land valued at about $20,000; the payee brought an action on the note, and the court took the case from the jury and directed a verdict for the payee, on the ground that the matters of defense were cognizable only in a court of equity, and not at law. The Circuit Court of Appeals for the Seventh Circuit reversed the case, on the ground that the payee by his surrender of the collateral lost his right to recover on the note, and that the defense was available to both principal and sureties, and was cognizable in a court of law as well as in equity. Thereafter the maker of the note brought suit in the Circuit Court for the District of Kansas against the payee, who had disposed of the collateral, to recover $7,500 damages for the wrongful release of the judgment. The Circuit Court of Appeals for the Eighth Circuit said that the wrongful act of the payee as to the collateral gave the maker of the note an affirmative cause of action for breach of the contract of pledge, of which he might have availed himself in an independent action, and that it also at his option constituted a tort, and a cause of action for conversion    It added:

"His claim for damages was not only an affirmative cause of action against the bank, but it also constituted, at his option, *a good reason why the bank was not entitled to recover upon the note*, a good defense of payment of the note, to the action upon it."

And the court held that as the defense had been interposed in the action brought on the note, and he had had the benefit of it in that action, the record not disclosing to what extent his claim had been thus applied, he was not able to maintain the suit, as he could not use

the same defense first as a shield and then as a sword. Brown v. First National Bank, 132 Fed. 450, 66 C. C. A. 293 (1904).

In Ambler v. Ames, 1 App. D. C. 191 (1893), the court said in an action on a promissory note that:

"If the security has been used and proceeds realized from it, it is, of course, competent for the defendant so to show, and to claim credit upon the indebtedness to the extent of such proceeds."

In Donnell v. Wyckoff, supra, an action was brought upon a note for the sum of $7,500. At the time the note was given certain shares of stock were delivered with it as collateral. The court held that in an action on the note the defendant could set up the wrongful conversion of the stock by way of defense and be allowed the value of the pledge as payment of the debt pro tanto.

It is true that the bonds deposited as collateral belonged to the Brewery Company and were not the property of the defendant. But we are unable to discover that under the circumstances of this case that fact confers upon the bank or its receiver, as against this defendant, the right to convert the bonds and not be charged with the proceeds in an attempt to recover against him on the note. The defendant had a special property in the bonds so deposited because of the agreement the Company made with him. If the Company had not agreed that its bonds might be used as collateral for the note, defendant would have given no note. The money for which the note was given was money paid by the bank to enable the Company to discharge its debt to defendant, and the understanding between the Company and defendant was that the Company was to pay the note which was given for its accommodation. The collateral was given for the protection of defendant, as well as for the protection of the bank.

Judgment affirmed.