### 6559.   TURNER *v.* COMMERCIAL SAVINGS BANK.

1. Where an action is brought to enforce payment of a debt for which collateral security has been given, it is incumbent on the plaintiff either to produce and restore the collateral security, or to account satisfactorily for its non-production. In a suit brought upon a note which recites that certain collateral is given to secure its payment, and in which suit the collateral is neither tendered nor satisfactorily accounted for, it is error, on general demurrer, to strike a plea which alleges that such collateral was actually deposited, and in which the ability of the plaintiff to produce the collateral is denied. Such an allegation practically amounts to an allegation that the collateral has been converted; and if this were true, the defendant would have the right to recoup the value of the converted security, as against the payment of the note.

2. In view of the error in striking the defendant's answer, the further proceedings in rendering the verdict and judgment were nugatory.

DECIDED FEBRUARY 10, 1916.

Complaint; from city court of Atlanta—Judge H. M. Reid. March 29, 1915.

*Paul L. Lindsay,* for plaintiff in error.

*Green, Tilson & McKinney,* contra.

RUSSELL, C. J. The suit was for $1,250, on a note signed by the defendant, payable to R. E. L. Whitworth, and indorsed by Whitworth to the plaintiff. The note is numbered "4," and recites that it is one of a series of four notes aggregating $5,000, given for the purchase-money of Whitworth's interest in the Metropolitan Land Company. It contains also the following recital: "I hereby transfer to him [the payee] $5,000.00 of the stock of

Realty Mortgage Co. to secure the payment of this note." The plaintiff's petition alleges that it holds 12 shares of stock of Realty Mortgage Company, of the par value of $100 per share, to secure the payment of the note sued on, and asks that its special lien be set up and established as against this stock. The defendant's answer admits the execution of the note, and that the plaintiff has title thereto, but as defense to the suit says that "at the time of signing the note herein sued upon, defendant transferred to the said R. E. L. Whitworth a total of five thousand dollars of stock of Realty Mortgage Company, of Atlanta, Georgia, same evidenced by four certificates, only one of which is mentioned in said paragraph; said stock being of more than face value; that is, said stock is worth more than the par value, and that the note herein sued upon is one of a series of four notes given at the same time, and the same appears on the face of the same by the fact that the number '4' appears on the left-hand corner of the said note and appears in the body of the note, and the note shows that all the stock before referred to as Realty Mortgage Company stock, that is set forth in said note, should be accounted for and tendered to defendant, or the ability of petitioner to deliver should appear in the premises, and that the same has not been done and the said ability does not appear, and defendant denies the ability of petitioner to produce the same," and "defendant should not be required to pay the note herein sued upon until petitioner accounts to defendant for the remaining collateral which said note evidences that is held by petitioner or their predecessors in the premises." The plaintiff demurred to the paragraph wherein the above-quoted matter of defense is set out, upon the ground that "the facts therein alleged and set up are irrelevant, immaterial, and constitute no defense to the plaintiff's petition." This demurrer was sustained and the answer stricken, and it is of this judgment that the bill of exceptions complains. We are of the opinion that the court erred in sustaining the demurrer. Our Civil Code, § 3533, says: "The pawnee may transfer his debt and with it the possession of the thing pawned, and the purchaser stands precisely in his situation." Section 3528 describes a pledge or pawn as being "property deposited with another as security for the payment of a debt. Delivery of the property is essential to the bailment, but promissory notes and evidences of debt, warehouse receipts, elevator

receipts, bills of lading, or other commercial paper symbolic of property may be delivered in pledge." "The terms 'collateral security' and 'collateral' are used to designate a pledge of negotiable paper, shares of corporate stock," etc. Jones on Collateral Securities (3d ed.), § 1. The stock of Realty Mortgage Company described in the note sued on is therefore but a pledge for the payment of the note.

Under the provisions of code-section 3533, supra, the plaintiff stands precisely in the situation, so far as the pledge is concerned, that Whitworth, the original owner of the note and pledgee, would have occupied had he retained the possession of the note. Whether the collateral was actually turned over to the plaintiff or not, the note itself contained a notice that there was collateral deposited therewith. "The original contract of pledge is not put an end to by repledging the thing pledged." Jones Collateral Securities (3d ed.), § 420.

The bank was the owner of the note reciting that $5,000 of the stock of Realty Mortgage Company was placed with the original holder as security for the payment of the note, and thus was put on notice that a demand would likely be made for the return of this pledge before or at the time of payment. In the case of *Bank of Forsyth v. Davis,* 113 *Ga.* 341 (38 S. E. 836), the court held: "The payee of a negotiable promissory note, who receives other notes from the maker as collateral security, may lawfully transfer such collaterals to one to whom such payee assigns the principal note; and if the assignee wrongfully converts the collateral to his own use, the payee in the principal note will not be liable in trover for such conversion;" and Cobb, J., delivering the opinion of the court, said: "When the pawnee transfers his debt and delivers to the transferee the property given to secure the debt, the transaction is not a sale of the pledge, but simply places the transferee in the same position which the original creditor occupied." Section 4276 of the Civil Code provides that "The transfer of notes secured by mortgage or otherwise conveys to the transferee the benefit of the security." It will thus be seen that with the indebtedness secured by the collateral, the presumption is that there was also conveyed the collateral itself. The lien of a pledge can not be separated either from the possession of the pledge, or from the debt; so that to make an effective sale both must pass to the assignee. Jones Collateral Securities (3d ed.), § 418, citing cases.

It is well settled therefore that the position of the plaintiff in the present case is no better than that of the original holder of the note and pledgee, so far as relates to any defense the maker of the note might have by reason of the failure to produce and account for the collateral security which was placed with the note. The question therefore arises whether the failure of the plaintiff to produce or account for the collateral can be pleaded in defense to the suit on the note. In the Pennsylvania case of Stuart *v.* Bigler, 98 Pa. St. 80, which seems to be one of the leading cases on the question, it was said: "Where an action is brought to recover a debt for which collateral security has been given, it is incumbent on the plaintiff either to produce and restore the collateral security, or to account satisfactorily for its non-production." See also Spalding *v.* Bank of Susquehanna, 9 Pa. St. 28; Bank of U. S. *v.* Peabody, 20 Pa. St. 454; Ocean Nat. Bank *v.* Fant, 50 N. Y. 474; Smith *v.* Rockwell, 2 Hill (N. Y.), 482. There are, it is true, some decisions holding that the pledgor can not set up, in defense to a suit upon a debt, a claim for the value of the pledge, by way of set-off or recoupment. See Winthrop Savings Bank *v.* Jackson, 67 Me. 570 (24 Am. R. 56). However, the greater weight of authority seems to support the right of a pledgor to set up a conversion of the pledge, as a defense to an action on the debt; and that he may make this defense by way of counter-claim. See Cass *v.* Higenbotam, 100 N. Y. 248 (3 N. E. 189); Carrington *v.* Ward, 71 N. Y. 360; Haskell *v.* Africa, 68 N. H. 421 (41 Atl. 73); Barnes *v.* Bradley, 56 Ark. 105; Donnell *v.* Wyckoff, 49 N. J. L. 48 (7 Atl. 672); Bank etc. *v.* Marshall, 11 Fed. 19. In the case of Donnell *v.* Wyckoff, supra, it was said: "The loan of money and pledge of the stock as collateral security are parts of the same transaction, and the value of the property wrongfully converted and the amount of the debt can both be as readily ascertained in the action by the pledgee for the debt as in the action by the pledgor for the conversion of the pledge. In view of the fact that transactions of borrowing money on collateral securities have become common and in large amounts, and that the securities pledged are usually such as are negotiable, and the pledge effected by blank indorsements, public policy requires the protection of the borrower from the consequence of the wrongful disposition of the property pledged, as far as is consistent with the rules of law and the forms of action. To deprive the creditor of all

remedy for his debt because by inadvertence he has made an unlawful disposition of the pledge—it may be of less value than the debt —would be unjust. Equally unjust would it be to compel the debtor to pay the debt in full in the face of the wrongful disposition of the property pledged, and then put him to an action of trover against the same party, who may be insolvent and incapable of satisfying the judgment against him. The injustice that might be done to the pledgee in an action of trover for the wrongful conversion of the pledge—the debt for which it was pledged being unpaid—is obviated by allowing the amount of the debt in abatement of damages, on the theory that to that extent the property pledged has been applied to the pledgor's use. On the same principle the value of the pledge wrongfully converted may be treated as payment pro tanto or in full in an action for the debt." "Where collateral has been given as security for the payment of a note, in a suit upon the note the debtor may plead as a counter-claim or set-off the actual value of any of such collateral which the creditor has converted to his own use, or the value of any such security which he has released, dissipated, or diverted from the purpose for which he held it." Joyce's Defenses to Commercial Paper, § 613, p. 768, citing Hawley Hardware Co. v. Brownstone, 123 Cal. 643 (56 Pac. 468); Jennings v. Moore, 189 Mass. 197 (75 N. E. 214); Richardson v. Ashby, 132 Mo. 238 (33 S. W. 806); Carson v. Buckstaff, 57 Neb. 262 (77 N. W. 670). In Richardson v. Ashby, supra, the Supreme Court of Missouri said: "In an action on a note it appeared that at the time the defendant executed it she pledged the plaintiff's intestate other notes as collateral security; that the deceased had repledged them as collateral on a note made to himself, and that the plaintiff could not produce them; that the defendant admitted her liability on her note, and in a counter-claim prayed judgment against the estate of deceased for the difference between the value of the collateral notes and the sum due from her. Held, that the repledging of the notes was a conversion, and that the defendant was entitled to the judgment prayed for."

There can be no question in this State as to the right of a defendant to recoup for the wrongful conversion of collaterals. In the case of Waring v. Gaskill, 95 Ga. 731 (22 S. E. 659), where the plaintiff, in violation of his contract, sold certain collaterals

without giving the notice as required by the contract, it was said: "Where a suit was brought for the recovery of the balance due upon the note after giving credit for the net proceeds of the sale of the collaterals, it was the right of the defendant to plead in recoupment the conversion; and in adjusting the account between the parties, he was entitled to credit for the actual value of the collaterals at the time of the sale. This defense could not be made without demanding restitution of the collaterals, or tendering payment of the debt secured thereby." See also, in this connection, *Harrell* v. *Citizens Banking Co.*, 111 *Ga.* 846 (36 S. E. 460); *Halliday* v. *Bank of Stewart County*, 112 *Ga.* 461 (37 S. E. 721); *Whigham* v. *Fountain*, 132 *Ga.* 277 (63 S. E. 1115). In *Halliday* v. *Bank of Stewart County*, supra, it was said: "Where one deposits property with another as security for the payment of a debt, such property is thereafter held in pledge; but the effect of the transaction is not to divest the title of the pledgor." Our views are in accord with those expressed in the case of Donnell *v.* Wyckoff, supra. The pledging of collateral security for loans is very common. It is not uncommon for unscrupulous persons to lend money on such securities, and it would be possible for such a one, if we were to hold differently from what we do hold in this case, to obtain notes, secured by collaterals, and then to discount the notes to another and convert the collaterals to his own use, and in such case the only remedy of the pledgor would be to pay his note and bring an action of trover against the original payee for the conversion of his collaterals, provided the payee could be found.

We have in the present case the holder of a note for $1,250, which is the last of a series of four given for the same amount, and secured by $5,000 worth of corporation stock, which is alleged by the defendant to be worth more than that amount. The plaintiff, though he has notice in the face of the note of these facts, attempts to account only for a part of the collateral which was given to secure his note. It may be that the plaintiff has the whole of the collateral, but it is not so stated nor is there an offer to account for the remainder. The defendant is, in our opinion, entitled to know if his collateral can be and will be accounted for. All collateral security is held in trust, first to apply the proceeds of it toward the payment of the debt; and second, on payment of the

debt in full from other funds, to restore the property to the pledgor. If the property was not required to be used for the first purpose, then it must be applied to the second. The very allegations of the plaintiff's petition negative the idea that the collateral was sold, as is provided by section 3530 of the code, and the proceeds applied to the payment of the note. The plaintiff, when it acquired the note, was put on notice that its payment was secured by a deposit in trust. If the original payee transferred the collateral to the present plaintiff with the note sued on, then the plaintiff, and not the original payee, would be liable for its conversion, if in fact it had been converted (*Bank of Forsyth* v. *Davis,* supra), and the value of the converted security could be set off as against the note. In other words, the party who actually converted the security would be liable therefor. But the fact that all the security or any part thereof had been converted and could not be accounted for would afford the defendant protection against payment of the note, in the hands of any person, to the amount of the value of the converted securities.

We are of the opinion, therefore, that the allegations of the defendant's answer practically amounted to an allegation that his collaterals had been converted, and that the court erred in sustaining the demurrer to the defendant's answer.

*Judgment reversed.*