Salt Lake Inv. Co. v. Stoutt, 54 Utah 100.

## SALT LAKE INV. CO. v. STOUTT.

No. 3226.   Decided March 14, 1919.   Rehearing Denied April 22, 1919.   (180 Pac. 182.)

1. BILLS AND NOTES—ACTION ON NOTE—ACCOUNTING FOR SECURITY. Although note purchased by plaintiff was overdue at time of purchase, so that he was not a holder in due course, in action on the noté he could not be required to account for stock given to secure it, where he never had the stock in his possession, and did not know of its existence.   (Page 103.)

2. APPEAL AND ERROR—MOTION FOR NEW TRIAL NOT ARGUED—REVIEW. Though motion for new trial was not argued, where grounds upon which it was made are stated in the brief and relied upon by appellant the Supreme Court will waive the rule and give the motion due consideration.   (Page 105.)

3. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE.  If defendant did not use due diligence required by statute to procure proposed newly discovered evidence, his motion for new trial should not prevail, no matter how material the testimony may have been on a new trial.   (Page 106.)

4. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE.  Defendant held not to have used due diligence to discover and produce alleged newly discovered evidence disclosed by affidavit supporting his motion for new trial.   (Page 107.)

5. APPEAL AND ERROR—ORDER DENYING NEW TRIAL—REVIEW.  The court on appeal will not reverse order denying motion for new trial unless trial court abused its discretion.   (Page 107.)

---

1 *Snell* v. *Cisler*, 1 Utah, 298; *Tiernan* v. *Trewick*, 2 Utah, 393; *Hydraulic Cement Co.* v. *Christensen*, 38 Utah, 525, 114 Pac. 524; *People* v. *Peacock*, 5 Utah, 237, 14 Pac. 332; *McKay* v. *Farr*, 15 Utah, 261, 49 Pac. 649.

Appeal from the District Court of Salt Lake County, Third District; *Hon. Harold M. Stephens*, Judge.

Action by the Salt Lake Investment Company against J. M. Stoutt.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*S. P. Armstrong* of Salt Lake City, for appellant.

---

---

*Walton & Walton* of Salt Lake City, for respondent.

THURMAN, J.

This is an action to recover on a promissory note for the sum of $2,019.90. The complaint alleges the execution of the note July 1, 1911, payable to plaintiff within one year from date, with interest at 8 per cent. per annum. It purports to be given for a valuable consideration, and provides for a reasonable attorney's fee if suit is brought for its collection. The complaint also alleges that the plaintiff is the owner and holder of the note; that the same has not been paid nor any part thereof; that $300 is a reasonable attorney's fee; and prays judgment accordingly.

The answer of defendant denies that the note was given for a valuable consideration, or that it has not been paid, or that $300 is a reasonable attorney's fee; and further alleges, in effect, that the note was given in renewal of a former note, which former note was likewise given in renewal of a prior note; that the original note was for the sum of $1,000, and was made payable to one Russell Woodruff, and was delivered to him, together with a certificate for 10 shares of the capital stock of the Utah National Bank of Salt Lake City as collateral security; that said note made no reference to the collateral security; that thereafter said note became due, and defendant, being unable to pay the same, procured a renewal thereof to be made to the National Bank of Prescott, Ariz., and to be delivered to it, together with 12 shares of the capital stock of said Utah National Bank as additional security; that said renewal note was made and said shares delivered, but the note so renewed contained no reference to the collateral security; that afterwards plaintiff came into possession of said note, and upon his request defendant renewed the same in or about the year 1904, and, finally, on July 1, 1911, by way of renewal, defendant executed the note upon which the action was commenced; that each of the renewal notes was given for the purpose of extending the time of payment; that there was no agreement for the disposition or application

of said collateral; that at the time said shares of stock were delivered as collateral they were reasonably worth $100 per share, which was their face value; that at the time of the commencement of the action said shares were reasonably worth $235 per share; that defendant, by diligent search and inquiry, has been unable to obtain information as to what disposition has been made of said shares of stock, whether the same have been sold and applied on the indebtedness, or as to the dividends thereof, if any, or how the same have been applied.

Defendant prays judgment that plaintiff be required to account for said collateral security and for any dividends or proceeds received from the sale of said stock; that if said stock has been converted defendant be credited with the value thereof, or, if said collateral is under plaintiff's control, that it be required to produce the same to be applied on said indebtedness or delivered to defendant on payment thereof. Plaintiff denied receiving said collateral, or any collateral, or any knowledge whatever concerning the same, prior to receiving defendant's answer.

· The complaint was filed January 13, 1917. The original answer was filed March 2d, and the trial had on July 5th of the same year. The case was tried to the court without a jury. Judgment was rendered for plaintiffs, to reverse which defendant prosecutes this appeal.

No attempt was made by the defendant to prove there was no consideration for the note or that the same was invalid. The sole defense relied on at the trial related to the disposition and application of the collateral security and the contention of defendant that plaintiff should account for the same.

It is not necessary to state the evidence in detail. The testimony of respondent supported the complaint, and the testimony of appellant supported the answer, in so far as the giving of the collateral security is concerned; it showed he delivered the stock as security for the note as alleged in his answer. It failed to show, however, what had become of the stock, whether it had been sold or converted, or whether it still remains in the hands of the original pledgee. The evi-

dence was conclusive that it never came into the hands of the plaintiff, and that it never had any knowledge of its existence at the time it purchased the note, nor until the defendant disclosed it by his answer filed March 2, 1917. Appellant's attorney announced at the beginning of the trial that one party or the other would require an inspection of the books and records of the Utah National Bank; that the bank was in process of moving, and the books and records at that time were inaccessible; that should it become necessary to have the records the case would have to be postponed. He thought the burden was on the plaintiff to produce the books. No motion was made for a continuance and the court directed the trial to proceed.

As before stated, the sole question arising before the judgment was rendered is: Was it incumbent upon the plaintiff to account for the disposition, application, or whereabouts of the stock pledged as security for the note? If it had been alleged and proven that the stock delivered had been legally sold and the amount determined, the defendant would have been entitled to a credit on the note for that amount. If it had been alleged and proven that the original pledgee had disposed of the stock unlawfully, then, in all probability, the defendant would have been entitled to a credit on the note in the sum equal to the value of the stock; or if it had been alleged that the stock had come into the possession of the plaintiff as security for the note, and plaintiff had admitted the fact or had not denied it, we are of the opinion it would have been incumbent upon the plaintiff to account for the stock, and until it did so it would not be entitled to judgment.

The note purchased by plaintiff was overdue when the purchase was made. It was not a holder in due course. Both under our statute and at common law it was subject to any defense growing out of the transaction which the defendant might have had against the original payee; but it is going too far to say that because the original payee to whom the stock was pledged and actually delivered could be required to account for it in a suit against the pledgor, that the plaintiff in this case, who never had the

stock in his possession and never even knew of its existence, could be required to account for it as a condition precedent to judgment in his favor. None of the cases relied on by defendant go to that extent, and we have been unable to find any supporting appellant's contention. Appellant cites the following authorities: Jones, Col. Secur. & Pledges (3d. Ed.) section 595; 21 R. C. L. 687, section 47; *Montague* v. *Stelts,* 37 S. C. 200, 15 S. E. 968, 34 Am. St. Rep. 736; *Richardson* v. *Ashby,* 132 Mo. 238, 33 S. W. 806; *Stuart* v. *Bigler's Assignees,* 98 Pa. 80; *Frank et al.* v. *Conklin,* 146 App. Div. 301, 130 N. Y. Supp. 778; *Donnell v. Wycoff,* 49 N. J. Law, 48, 7 Atl. 672; *Waring* v. *Gaskill,* 95 Ga. 731, 22 S. E. 659; *Turner* v. *Com. Sav. Bank,* 17 Ga. App. 631, 87 S. E. 918; *Taggard* v. *Curtenius,* 15 Wend. (N. Y.) 155; *Potter* v. *Tyler,* 2 Metc. (Mass.) 58; *Gilliam* v. *Davis,* 7 Wash. 332, 35 Pac. 69; *Haden* v. *Lehman,* 83 Ala. 243, 3 South. 528; Dan. Neg. Inst. (6th Ed.) section 177 (note 96), sections 205, 748, 1260, 1266, 1266a; *Keyes* v. *Mann,* 63 Iowa, 560, 19 N. W. 666; *American Car Co.* v. *A. C. St. Ry.,* 100 Ga. 254, 28 S. E. 40.

Upon an examination it will be found that in nearly every case cited the plaintiff was the pledgee or person to whom the collateral was pledged, which, in our judgment, is a vital distinction between those cases and the case at bar. Besides this, as before stated, plaintiff alleged, and a witness on its behalf testified, that plaintiff had no knowledge whatever of the collateral security; that it never received the collateral or knew of its existence. The question is therefore presented whether or not this affirmative statement of plaintiff was not as full and complete an account as it under the circumstances was able to give. The case of *Turner* v. *Com. Sav. Bank,* supra, appears to be the only case in any particular analogous to the present case; but, as will be seen, there was in that case a statute which controlled the decision, and, besides, the note specifically referred to collateral so that any person purchasing the note would know of the existence of collateral security.

In the absence of any authority holding that a plaintiff who brings suit upon a promissory note, who received no collateral with the note, and who is ignorant of its existence,

is, nevertheless, bound to account for the same, we feel impelled to hold that it was not incumbent upon the plaintiff to do so in the case at bar.

Appellant also assigns as error the failure of the court to find upon certain issues presented by the answer. These relate to the giving of the stock as collateral security, the value of the stock, and whether or not there was notice to appellant of the sale of the stock. These issues, under the pleadings, were immaterial. The court did find that the plaintiff had no notice or knowledge of the fact that collateral had been given to secure the original note and that it had not received said collateral. Under the issues these were the only material findings the court could have made respecting the collateral.

Other assignments of error were made by appellant, but they are without merit.

After judgment, in due time, appellant moved for a new trial, which motion was overruled. The motion was not argued, but as the grounds upon which it was made **2** are stated in the brief and relied on by appellant we are disposed to waive the rule and give the motion consideration.

In addition to assignments of error already considered the motion was made upon the ground of newly discovered evidence material to the defense. It was supported by the affidavits of the defendant and officials of the Utah National Bank. The affidavit of defendant was to the effect that he endeavored to see the books of transfer of capital stock of the Utah National Bank, and its stockbooks and canceled certificates, and secure the same as evidence for the trial, but was unable to do so because the bank was being removed, and the records were not accessible for examination during May, June, and July, 1917; that after the trial defendant was enabled to examine the books and found that ten shares of the capital stock of said bank and also twelve shares issued in his name, were delivered to the Prescott National Bank as collateral security for a note issued to said bank; that a new certificate for eleven shares was issued to said Prescott Bank in lieu of said certificates for ten and twelve shares, and that

said certificate for eleven shares, indorsed by said Prescott Bank, was transferred on November 29, 1899, to B. G. Raybould, to whom a new certificate was issued; that if granted a new trial he would be able to produce said books of transfer and the officers of said bank as witnesses to the facts above stated. Affiant further stated he would be able to prove that the Prescott Bank converted said stock and received therefor $216.70, and that the present value of the stock was $245 per share for the eleven shares, besides the dividends paid thereon, all of which should be credited upon said note. These statements respecting what the bankbooks disclosed were corroborated by the affidavits of the bank officials, as was also the fact that the records were inaccessible during May, June, and July, 1917. There is no question, in our judgment, but that the evidence alleged to be newly discovered was material for defendant's defense. It may not have been a complete defense but on the showing made it would have been at least a partial defense, as defendant would clearly have been entitled to a credit for some amount on his note.

But the serious question presented for our consideration is, Did the plaintiff use reasonable diligence to procure the proposed testimony for use at the trial of the case? If he did not, it does not matter how material or beneficial the testimony may have been on a new trial, his motion for a new trial should not prevail. The statute in relation to this ground for a new trial says: "Newly discovered evidence, material for the party making the application, *which he could not, with reasonable diligence, have discovered and produced at the trial.*" (Italics ours.) See, also, Hayne on New Trial and Appeal, section 92; Spelling, New Trial, sections 205 to 218 inclusive; *Snell* v. *Cisler*, 1 Utah, 298; *Tiernan* v. *Trewick*, 2 Utah, 393; *People* v. *Peacock*, 5 Utah, 237, 14 Pac. 332; *McKay* v. *Farr*, 15 Utah, 261, 49 Pac. 649; *Hydraulic Cement Co.* v. *Christensen*, 38 Utah, 525, 114 Pac. 524. The foregoing authorities are all in point to the effect that reasonable diligence must be used and without it a new trial will not be granted.

Did the defendant use reasonable diligence to discover and

produce at the trial the evidence disclosed by the affidavits referred to? It will be remembered the complaint was filed January 13, 1917, the answer was filed March 2d next following, and the trial had July 5th of the same year. Defendant himself was a banker of experience. He knew that the books of the bank would probably show transfers of his stock, from whom, to whom, and when. Assuming, as shown by the affidavit, that the records of the bank were inaccessible during May, June, and July, still there was the latter part of January, all of February, March, and April, unaccounted for during which he might have made the investigation required. But assuming, further, that defendant was justified in believing that inasmuch as the trial was had in Salt Lake City, and the bank was also situated there, he might apply at any time, even on the eve of the trial, and procure the information desired, nevertheless when appellant found at the trial that the books and records of the bank were inaccessible for the reasons stated, no motion was made for a continuance, and the trial court had no opportunity to afford relief even if it had been so inclined. Appellant elected to stand upon the proposition that it was the duty of the plaintiff to produce the records, and went to trial without the evidence which in the nature of the case he must have known was in existence and could easily be discovered.

Many of the authorities above cited treat the failure of a party to seasonably apply for a continuance under such circumstances as fatal to an application for a new trial.

However much the court might desire to see litigants in cases before it obtain every farthing to which they are entitled, yet it cannot ignore fundamental rules of practice established by statute and recognized by general law in order to achieve its conception of even-handed justice in a particular case.

In order to reverse the order denying appellant's motion for a new trial, we would be compelled to find that the trial court abused its discretion in denying the motion. This, under the law by which we are controlled, we cannot do.

For the reasons stated the judgment is affirmed, at appellant's costs.

CORFMAN, C. J., and WEBER and GIDEON, JJ., concur.

FRICK, J.

I concur. I feel constrained, however, to say that I yield assent to the result reached by Mr. Justice THURMAN only because the answer of appellant does not present the real defense he might have interposed to the action, and that in view of his conduct, which is set forth by my Associate, the district court did not abuse its discretion in denying the motion for a new trial. In my judgment the appellant had a good defense if he had properly availed himself of it at the proper time, for the following reasons:  Our statute (Comp. Laws 1917, section 7230), so far as material here, reads:

"There can be but one action for the recovery of any debt or the enforcement of any right secured by mortgage upon real estate or personal property, which action must be in accordance with the provisions of this chapter."

The proceedings are then outlined.

In *Boucofski* v. *Jacobsen*, 36 Utah, 165, 104 Pac. 117, 26 L. R. A. (N. S.) 898, we, in following antecedent cases held that where a debt or obligation is secured no personal action can be maintained or personal judgment legally entered against the debtor until the security has been applied to the satisfaction of the debt secured thereby, and then a personal judgment can only be entered for the deficiency which remains unsatisfied.

In the recent case of *Coburn* v. *Bartholomew*, 50 Utah, 560, 167 Pac. 1156, we held that the procedure provided for in section 7230, supra, applied and must be followed in a case where the debtor as in the case at bar, deposited stock as collateral security for the debt. To the same effect is the still more recent case of *Robison* v. *Gull*, 52 Utah, 323, 173 Pac. 905. It is not necessary to refer to the other cases of this court in which

the doctrine laid down in the foregoing cases is recognized and
applied.

It was suggested at the hearing by its counsel.that in view
that respondent obtained the note in question without knowl-
edge of the security or of its existence, which security was de-
posited by appellant with the original payee of the note, that,
for that reason, the provisions of section 7230, supra, have no
application. In my judgment the contention is not sound.
We have another statute, which, as I view it, is applicable
here. Section 6578 provides:

"When cross-demands have existed between persons under such
circumstances that, if one had brought an action against the other,
a counterclaim could have been set up, the two demands shall be
deemed compensated so far as they equal each other, and neither
can be deprived of the benefit thereof by the assignment or death
of the other."

It will thus be seen that section 7230, supra, makes no ex-
ception regarding the right of action, while section 6578 ex-
pressly provides that the death of the original creditor nor
the assignment by him can defeat the rights of the debtor. It
goes without saying that the doctrine of section 6578 has
no application to the transfer in due course of a negotiable
instrument; that is, if transferred before due, etc. As
pointed out, however, by Mr. Justice THURMAN, the appel-
lant lost no rights by reason of the assignment of the note in
question. The fact that respondent did not obtain the col-
lateral nor have any knowledge thereof is not disputed, and
must therefore stand as the fact in this case. If, therefore,
the appellant desired to avail himself of the provisions of
section 7230, it was his duty to aver in his answer the facts
concerning the deposit of the collateral security and state the
value thereof. Had that been done the duty then would
have devolved upon the respondent to amend its complaint,
and allege therein the fact that it did not obtain nor know
of the collateral security, and hence could not be charged
therewith. The appellant could then have set up the facts
with regard to the security and its value in an amended an-
swer, and that the same was theretofore converted or applied
by the original payee before the assignment of the note to

the respondent, and upon proving the facts in that regard, and also proving the value of the collateral, he, under section 6578, supra, would have been entitled to an offset against the note for the value thus established. If the value of the collateral were found greater than or equal to the amount due on the note when the conversion or application was made, as before stated, appellant was entitled to a judgment dismissing the action. In no event, however, in view of the undisputed facts and circumstances of this case would he have been entitled to an affirmative judgment against the respondent, regardless of the value of the collateral established by him. In view of the undisputed facts, however, the burden was upon the appellant to prove the deposit of the collateral, the conversion or application thereof as before stated, and its value. This he failed to do. Nor, in my judgment, did he aver sufficient facts in his answer, even though they were proven, to entitle him to the relief herein outlined; nor, for the reasons stated by Mr. Justice THURMAN, can he avail himself of the adverse ruling of the district court on his motion for a new trial.

In view of the foregoing I can see no escape from the conclusion reached by my Associate, although, in my judgment, appellant is required to pay a debt twice, or, in any event, far more than in justice he ought to pay. Courts, however, cannot ignore the long-established and well-settled rules of law and procedure which are essential to the due administration of law and justice in order to avoid a seeming injustice in a particular case. Nor can they decide questions not properly presented for review. That would be usurping power, which, if indulged, would, in the long run, lead to far greater injustice.