## STATE v. WEAVER.

No. 5220. Decided December 15, 1931. (6 P. [2d] 167.)

556

*King & King* and *Parnell Black,* all of Salt Lake City, for appellant.

*Geo. P. Parker,* Atty. Gen., and *Byron D. Anderson,* Deputy Atty. Gen., for the State.

FOLLAND, J.

The defendant, Ernest Weaver, was convicted of the crime of grand larceny in the district court of Salt Lake county,

and was by the court sentenced to a term of imprisonment. From this judgment plaintiff appeals. The grounds relied on by him for reversal of the judgment are: (1) The overruling of defendant's motion for a new trial; (2) insufficiency of the evidence to support the verdict; (3) that the verdict is contrary to law; (4) the refusal of the court to strike certain testimony. The defendant was charged jointly with George Ross, but the two were separately tried.

The facts disclosed by the record are substantially these: About 7 o'clock in the morning of December 21, 1930, the glass of one of the front windows of the jewelry store of Joseph Goldstein, at 155 South Main street, Salt Lake City, was broken, and several diamond pins, rings, and other articles of jewelry, including a lady's wrist watch, all of the approximate value of $2,000, were taken from the window through the opening made by the breaking of the glass. The night watchman was sleeping on a bed in the rear of the store. He heard the crash, and, upon raising from his bed, and looking toward the front, he saw one man wearing a soft fawn-colored hat facing north in front of the window. The watchman telephoned to the police, and by the time he was sufficiently dressed and made his way to the front of the store, the police had arrived and a crowd was gathering. He saw no one running away from the scene of the crime. Shortly after 7 o'clock on the same morning two police officers were at the Granite Hotel located about a block and a half east of Main street on Second South street for the purpose of finding and investigating two men who were stopping at the hotel. Upon going to room No. 5 where it was supposed the men were, they found one man in bed but did not find the two men they were looking for. They went outside the hotel, but immediately returned and went to another room, where they engaged a woman in conversation. While there they heard a door slam and footsteps of men going down the stairs. The officers went into the hall, called on the men to halt, and, upon their failing to do so, fired a shot. One of the men, George Ross, stopped and was taken into custody. The other man, this defendant, con-

tinued down the steps to the street, thence easterly to the street corner, and into Brunswick court, which runs easterly from Second East street between Second South and Third South streets. He was followed by the officer who fired several shots. At the end of the alley he encountered a high board fence, at which point he turned, gave himself up, and was taken into custody. The officer testified that when arrested Ross was wearing a cap and Weaver a soft hat. Weaver testified both were wearing soft hats. At the police station both men were searched. Several diamond pins and rings were found on Ross and a lady's wrist watch in the coat pocket of the defendant, Weaver. An officer testified that shortly thereafter police officers returned to the premises at the end of Brunswick court, and in the vicinity of the board fence at the end of the court found two diamond stick pins and a ring, that there had been a fresh fall of snow that morning, and there were no footprints leading to the fence other than those made by Weaver. All the articles of jewelry were on cards or had tickets attached and were identified by Goldstein as property belonging to him and taken from his store. The officer testified at the police station Ross admitted he had stolen the jewelry from the store but did not implicate Weaver. The defendant testified that Ross there stated in the presence of the officers that he (Weaver) was not with him at the time of the larceny, nor had he assisted him in any manner; that he had given Weaver the watch for the purpose of sending it to a girl friend in Seattle whose address the defendant knew; that he had not been with Ross at the time of the larceny, but had met him in front of the Occidental Cafe on east Second South street, upon leaving the cafe after eating breakfast there; that he accompanied Ross to the State Hotel and later followed him to and into the Granite Hotel, where they encountered the officers; that the lady's wrist watch was given him by Ross after their meeting in front of the Occidental Cafe; and that he had no other of the stolen articles in his possession at any time. Ross escaped from the county jail and was on escape at the time of

Weaver's trial. He was later apprehended, pleaded guilty, and was sentenced to a term of imprisonment.

Appellant's argument is directed mainly to the alleged error of the court in overruling the motion for a new trial. This is claimed to be error for the reasons: (a) That the verdict is contrary to law; (b) that it is contrary to and not supported by the evidence; (c) that the court misdirected the jury in matters of law and erred upon questions of law arising during the course of the trial prejudicial to the substantial rights of the defendant; and (d) newly discovered evidence material to defendant's defense which he could not with reasonable diligence have procured at the trial. The main point relied on is the last; that is, that because of the showing made as to newly discovered evidence a new trial should be granted. The evidence which is characterized as newly discovered is testimony which it is claimed would be given on another trial by George Ross and is embodied in an affidavit made by Ross after his apprehension and plea of guilty. Affiant stated he was absent from the state at the time of defendant's trial, February 18, 1931; that he alone committed the larceny of the jewelry from the store of Joseph Goldstein on December 21, 1930; that the defendant, Weaver, did not participate in, or counsel or advise, its commission; and that the affiant gave defendant the lady's wrist watch found in his possession at the time of his arrest for the purpose of having it sent to a named girl friend in Seattle, Wash.; and that at the time the defendant did not know the watch had been obtained by larceny.

Newly discovered evidence, to be ground for a new trial, must satisfy several elementary requirements. The courts are not in accord respecting all these requirements, but fairly agree that the newly discovered evidence ■ be such as could not with reasonable diligence have been discovered and produced at the trial, that it be not merely cumulative, and that it be such as to render a different result probable on the retrial of the case. Note, 46 L. R. A. (N. S.) 903.

The evidence proposed by the codefendant, Ross, is, strictly speaking, not newly discovered evidence. The facts to which he would have testified were known to the defendant and his counsel at the time of his trial, and were testified to by the defendant as a witness in his own behalf; that is, defendant not only testified that he did not participate in the commission of the crime, but he also testified that Ross had declared, in his presence and in the presence of the police officers, that he (Weaver) did not participate in the crime, that it was committed by Ross alone, and that the watch was given to Weaver by Ross for the purpose stated. The state produced no rebuttal to contradict the evidence given by the defendant with respect to Ross' statements. The police officer testifying for the state in its main case said that Ross "had admitted his part of the crime and would not implicate Weaver." It is apparent from the record that the witness, Ross, after his arrest, had escaped from the county jail and was not available as a witness at the trial of defendant. It fairly appears that the witness could not have been produced by any sort of diligence on the part of the defendant. While not newly discovered evidence, it is evidence which for the first time became available to the defendant on his motion for a new trial, and for that reason we think it should be considered and treated subject to the rule heretofore stated the same as newly discovered evidence. 16 C. J. 1187, 1191; *Gill* v. *State,* 56 Tex. Cr. R. 202, 119 S. W. 684, 17 Ann. Cas. 1164. Where, as here, the evidence is discovered before trial but the witness is absent, not only must diligence be shown in attempting to obtain the testimony of the absent witness, but an application must have been made to obtain a postponement of the trial so as to give opportunity to obtain such witness or evidence before the defendant may avail himself of a motion for a new trial on the ground of newly discovered evidence. 20 R. C. L. 291. A motion was made by the defendant for a continuance of his case at the time it was first set for trial, which motion was supported by an affidavit alleging the absence from the state of the wit-

ness Ross and stating the substance of his testimony. Upon this motion and showing at least one continuance was granted by the court. The case was later called for trial on February 18, 1931. While defendant's counsel protested that he was not ready for trial, no showing was made by affidavit that the witness Ross was still beyond the jurisdiction of the court, and no motion was made for a postponement of the trial of the case. It is doubtful under the circumstances whether the defendant has placed himself in a position to urge that a new trial be granted to allow the admission of the testimony of the absent witness. 16 C. J. 1195.

Passing that question without deciding it, we are of the opinion and so hold that the trial court did not err in refusing to grant a new trial on the ground of newly discovered evidence. It is the general rule that the granting or refusing of a motion for a new trial rests in the sound discretion of the trial court, and that an appellate court will not disturb its action unless it appears that this discretion has been abused to the prejudice of the defendant. 16 C. J. 1119; 20 R. C. L. 290; *People* v. *Sullivan,* 3 Cal. App. 502, 86 P. 834. It was the duty of the trial judge to give careful attention to the affidavit filed in support of the motion and to consider it in connection with the evidence given at the trial. Having had the defendant and the witnesses before him, he was in a better position than we are to judge of the probable effect of the testimony now proposed. To justify him in granting a new trial he should be satisfied that the proffered evidence is such as to render a different result probable on a retrial of the case. Note, 46 L. R. A. (N. S.) 903; *Perry* v. *People,* 38 Colo. 23, 87 P. 796. Or he might have granted it had he any reasonable doubt as to the guilt of the defendant. *People* v. *Markle,* 89 Cal. 82, 26 P. 642. Before we are authorized to reverse the action of the trial court and direct the granting of a new trial, it must appear that the evidence proposed is of such character, when viewed with the other evidence given on the trial, as to raise a reasonable presump-

tion that the result of a second trial would be different from that in the first and that the trial court had abused its discretion or was manifestly wrong in overruling the motion. *State* v. *Montgomery,* 37 Utah 515, 109 P. 815. From a careful reading of the record we are satisfied there was no abuse of discretion by the trial judge. We cannot say that the new evidence if offered and admitted, when considered with the facts testified to on the trial, probably would produce a different verdict. The facts to which Ross offers to testify were actually before the jury, and we are unable to see that the result would probably be different, if, on a new trial, they were testified to by Ross. One circumstance testified to by the officers is the finding of a ring and two diamond stick pins in the vicinity of the board fence at the end of Brunswick court. It is inferable that these articles of jewelry were thrown away by this defendant, and, if the testimony of the officer in this regard is believed by the jury, it would tend to prove that the defendant's explanation of possession of the stolen property was entirely unsatisfactory and tend to discredit the effort on the part of the codefendant to assume full blame for the crime and exonerate the other codefendant. In view of this evidence, the affidavit of Ross whereby he exculpates this defendant is not so convincing in its character as to justify a new trial. *State* v. *Hyde,* 22 Wash. 551, 61 P. 719. Appellant lays considerable stress on the testimony of the night watchman that he had seen but one man at the window when he looked to the front of the store after he had heard the crash. This is not proof, however, that the crime was committed by only one man. The night watchman's view was necessarily restricted both as to area and time. He merely looked toward the front of the store for a moment and then gave his attention to dressing himself and phoning to the police. It is not the same as if he had been on the outside of the store and could command a full view of the entire premises, so that he could say that only one man was concerned in the actual breaking of the window and taking of the property. It is unnecessary for us to discuss

whether the evidence proposed was cumulative so as to come within the rule and we therefore express no opinion.

Sufficient has been said to indicate that there is ample evidence in the record to support the verdict of the jury. This disposes of appellant's objections that the verdict is contrary to law and is contrary to and not supported by the evidence.

The next point made and strongly relied on is that the court misdirected the jury in matters of law in the giving of instruction No. 6. The appellant is not entitled to have this court pass upon the question of alleged error in instructing the jury for the reason that no objection was made or exception taken to the charge at the time it was given or before verdict. Appellant asks to have it reviewed now as one of the grounds of his motion for a new trial, but under the statute the objection comes too late and cannot be considered by us. Comp. Laws Utah 1917, § 9189, of the Penal Code, provides that "exceptions to instructions to the jury shall be taken and preserved as in civil cases." Section 6806 provides with respect to civil cases, "exceptions to the charge or any portion thereof, or to the refusal or modification of any instruction requested, shall be taken at the time the charge is given or before verdict." This court has held where no exception was taken to an instruction at the trial and before verdict in a criminal case it cannot be reviewed and is not reviewable because the attention of the trial court was not directed to it by proper exception. *State* v. *Zeman*, 63 Utah 422, 226 P. 465. See, also, *Morgan* v. *Child, Cole & Co.*, 61 Utah 448, 213 P. 177, and other cases cited therein. These cases are in harmony with the general rule, which is that, in the absence of statute providing otherwise, it is too late to take exception to the charge of the court after verdict or on motion for a new trial. 16 C. J. 1070.

The remaining assignment of error goes to the refusal of the court to strike out the testimony of the officer of the finding of the ring and diamond stick pins near the place

where Weaver, after chase, surrendered to the officer. His contention is that this was evidence against Ross and was not competent against this defendant in the absence of direct testimony that he actually participated with Ross in the theft or aided, abetted, counseled, or advised him in the commission of the act. This is testimony of a circumstantial character which is material and relevant to the charge against the defendant, in that it tends to prove that he had possession of other articles of the stolen property than merely the wrist watch and tends to characterize his explanation of possession of the wrist watch as untrue and unsatisfactory. The evidence was properly admitted, and no error was committed by the court in refusing to strike it upon defendant's motion.

The judgment is affirmed.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.