## STATE v. HAWKINS.

No. 5084.   Decided December 14, 1932.   (16 P. [2d] 713.)

*M. M. Larsen,* of Provo, for appellant.

*Geo. P. Parker,* Attorney General, and *W. A. Hilton,* Deputy Attorney General, for the State.

ELIAS HANSEN, J.

The defendant was convicted of being a persistent violator of the laws of this state "Prohibiting the Manufacture and Use of Intoxicating Liquors, and Regulating the Sale and Traffic Therein." The act

(Comp. Laws 1917, § 3345 as amended by Laws 1925, c. 10) provides that

"a person having once been convicted of a violation of any of the provisions of this title, except Section 3361, who thereafter violates the provisions thereof, shall be considered a persistent violator of this title, and shall be deemed guilty of felony, and, upon conviction thereof, shall be imprisoned in the State prison at hard labor for not less than three months nor more than two years."

Sentence was imposed upon the defendant as in the act provided. He appeals. He assigns as error: That the information filed against him does not state facts sufficient to constitute a public offense; that the district court was without jurisdiction to try him because the court before whom the preliminary hearing was had was without jurisdiction to bind him over to the district court; that the evidence received at the trial was insufficient to sustain the verdict; that the trial court erred in refusing to give certain of his requested instructions to the jury; that the trial court erred in receiving over his objections certain evidence offered by the state; and that the trial court erred in refusing to grant him a new trial. The charging part of the information reads as follows:

"That said Arthur Hawkins, on or about the 24th day of July A. D. 1929 at the County of Utah, State of Utah, unlawfully, wilfully, feloniously and knowingly, did then and there, have in his possession certain intoxicating liquor, to wit: Moonshine Whiskey, containing more than one-half of one per cent alsohol by volume, he, the said Arthur Hawkins, prior to the commission of the offense above set out, to wit, on the 7th day of December, A. D. 1928, in a Criminal Action before the City Court of Provo City, Utah County, State of Utah, wherein the State of Utah was plaintiff and he the said defendant Arthur Hawkins was defendant, having been duly convicted of a violation of the provisions of Title 54, Compiled Laws of Utah, 1917, which said former violation was not a violation of section 3361 of said title 54, Compiled Laws of Utah 1917. * * *"

The defendant, in the court below, challenged the sufficiency of the information to state a public offense by a

demurrer, by an objection to the introduction of evidence, and by a motion in arrest of judgment. Defendant's contention in this court seems to be that the information does not allege facts sufficient to constitute the crime of a felony. Counsel for the defendant does not point out where the information is defective in failing to allege sufficient facts to constitute the misdemeanor of unlawfully having in his possession intoxicating liquor. All of the elements necessary to constitute such misdemeanor are alleged in the information. The point urged by defendant is that the information is fatally defective in that it does not allege the particular provision of title 54, Comp. Laws Utah 1917, which the defendant is charged with having theretofore been convicted of violating. A similar question was presented and decided against defendant's contention in the case of *State* v. *Durfee,* 77 Utah 1, 290 P. 962. A comparison of the information in the instant case with the information in the Durfee Case shows that the charging part of the two informations with respect to the prior convictions are identical except as to the names of the defendants and the date of the alleged prior convictions. In the instant case, the insufficiency of the information was challenged in the court below. In the Durfee Case, the question was raised for the first time in this court. It is suggested in defendant's brief that the rule to be applied in testing the sufficiency of an information to charge a public offense depends somewhat on whether the question was or was not raised in the trial court; that where the question is raised before the trial court the pleader should be held to a more specific and detailed allegation than where the question is presented for the first time in this court. In the instant case, the only attack made upon the information is that it does not state facts sufficient to constitute a public offense. Our law permits the complaint to be assailed upon the ground that it fails to state a public offense after, as well as before, verdict. What was said in the Durfee Case with respect to the information there involved applies to the information in the

instant case. We adhere to the law announced in that case. The defendant must fail in his claim that the information is fatally defective. It does allege facts sufficient to constitute a felony, viz., that of being a persistent violator of the provisions of title 54, Comp. Laws Utah 1917.

It is next contended on behalf of defendant that Maurice Harding was acting as justice of the peace of Provo precinct and not as judge of the city court of Provo City when he conducted the preliminary hearing, and when he bound the defendant over to the district court; that as justice of the peace of Provo precinct, Maurice Harding was without authority to bind the defendant over to the district court, and that therefore the district court was without jurisdiction to try the defendant. The facts appearing upon the record before us touching those contentions are these: The complaint upon which the preliminary hearing was had is entitled: "In the City Court of Provo City, County of Utah, State of Utah. Before Honorable Maurice Harding, Judge of said Court, and ex-officio Justice of the Peace in and for Provo Precinct, Utah County, Utah." It is recited in the body of the complaint that "on this 30th day of July A. D. 1929, before me, Maurice Harding, Judge of the above entitled court and ex-officio Justice of the Peace within and for Provo Precinct, Utah County, State of Utah," etc. The complaint was subscribed and sworn to before Maurice Harding. Under his signature appears the words "Judge of the City Court of Provo City and ex-officio Justice of the Peace in and for Provo Precinct, Utah County, State of Utah." The warrant of arrest is entitled: "In the City Court of Provo City, County of Utah, State of Utah." It is signed by Maurice Harding as Judge of the city court of Provo City. The evidence shows that the crime charged was committed, if at all, in Utah county, Utah, but not in the Provo precinct. As bearing upon the extent of the criminal juisdiction of justice of the peace and of city courts, our attention is directed to the provisions of Laws Utah 1925, c. 62, p. 125. It is there provided:

"Justice's courts have jurisdiction of the following public offenses committed within their respective precincts or cities in which such courts are established but if there be no duly established justice court in the precinct where any of such offenses be committed, then the city courts of cities having a population of more than 5000 inhabitants shall have jurisdiction of such public offenses and if there be no duly established city courts as aforesaid, then the nearest accessible justice court shall have jurisdiction of such public offense; provided, that such city courts above mentioned shall have original jurisdiction of the following public offenses committed within the respective counties in which such courts are established:

"1. Petit larceny;

"2. Assault or battery not charged to have been committed upon a public officer in the discharge of his duties, or to have been committed with such intent as to render the act a felony;

"3. Breaches of the peace, committing a wilful injury to property, and all misdemeanors punishable by a fine less than $300.00 or by imprisonment in the county jail or city prison not exceeding six months, or by both such fine and imprisonment."

It was held in the case of *Dillard* v. *District Court of Salt Lake County*, 69 Utah 10, 251 P. 1070, that under the provisions of the act of 1925, above quoted, the territorial jurisdiction of justices' courts to try criminal cases is limited to public offenses committed within their respective precincts or cities. It is urged that if the territorial jurisdiction of justices' courts is so limited to hear and determine criminal cases, so, likewise, are justices of the peace while acting as committing magistrates limited to holding preliminary hearings with respect to felonies and indictable misdemeanors committed within their respective precincts or cities. While no case has been called to our attention which supports the defendant's position, there is force to counsel's argument if it be conceded that Judge Harding was acting as a justice of the peace in conducting the preliminary hearing and in binding the defendant over to the district court. The record before us, however, does not justify such conclusion. The complaint filed against the defendant and the warrant of arrest are both entitled, "In the City Court of Provo City, County of Utah, State of Utah." It would be a strange doc-

trine to lay down a rule of law to the effect that where a person holding two offices, one of which gives him authority to act and the other does not give him such authority, his acts in a given case are presumed to be exercised pursuant to the office which gives him no authority. We know of no case so holding. No such doctrine is announced in the case of *Leatham* v. *Reger*, 54 Utah 491, 182 P. 187, cited by the defendant. The mere fact that the complaint recites that Maurice Harding is judge of the city court of Provo City and ex-officio justice of the peace of Provo precinct does not justify the conclusion that in conducting the preliminary hearing in this case he acted as justice of the peace rather than as city judge. Especially is that so in light of the fact that the warrant of arrest and the complaint, which formed the basis of the preliminary hearing, were entitled in the city court of Provo City, Utah county, Utah. A judge of a city court is a magistrate, and as such, may conduct a preliminary hearing. Laws of Utah 1919, c. 34, § 1713, p. 61. *State* v. *Shockley*, 29 Utah 25, 80 P. 865, 110 Am. St. Rep. 639; *State* v. *Hay*, 52 Utah 80, 172 P. 721. Judge Harding, as judge of the city court of Provo City, had jurisdiction to conduct the preliminary hearing and to bind the defendant over to the district court, and thereby the district court acquired jurisdiction.

Defendants questions the sufficiency of the evidence to support the verdict upon two grounds, viz.: (1) That the evidence shows that the alleged prior conviction of the defendant was had before a justice of the peace and fails to show that the offense of which the defendant was convicted was committed within the territorial limits of the precinct or city of such justice of the peace, and therefore the alleged prior conviction is a nullity; (2) that the evidence fails to show that the liquor alleged to have been taken from the defendant was intoxicating, or that it could be used as a beverage.

Touching the prior conviction of the defendant, the evidence shows: That on December 7, 1928, a verified com-

plaint entitled "In the City Court of Provo City, County of Utah, State of Utah. Before Honorable Geo. S. Ballif, Judge of said Court, and ex-officio Justice ■ of the Peace in and for Provo Precinct, Utah County, Utah," was filed with the clerk of that court. In the complaint so filed the defendant was charged with, on the 6th day of December, A. D. 1928, at Utah county, state of Utah, willfully, unlawfully, and knowingly having in his possession intoxicating liquors, to wit, moonshine whiskey. The complaint was subscribed and sworn to before George S. Ballif who signed his name as "Judge of the City Court of Provo City and ex-officio Justice of the Peace in and for Provo Precinct, Utah County, State of Utah." It will be observed that Laws Utah 1925, c. 62, heretofore quoted, grants to city courts territorial jurisdiction over misdemeanors committed within the county where such city courts are located. The complaint upon which the prior conviction is founded shows on its face that the proceeding in that case was had "In the City Court of Provo City, Utah County, State of Utah." The evidence therefore shows that the court in which the prior conviction was had did have jurisdiction.

The state's evidence bearing upon the character of the liquor which was taken from the possession of the defendant shows: That on July 24, 1929, one David J. Wilson, in company with Frank Jackson, went to the home of the defendant. Mr. Wilson asked the defendant for ■ a bottle of liquor. The defendant replied that he would go and get it. Later the defendant returned to his home and told Mr. Wilson, who was there waiting, that the sheriff had taken the liquor. John D. Boyd, sheriff of Utah county, testified that he was familiar with the smell of moonshine whiskey; that he smelled the liquor in question; and that in his opinion it was moonshine whiskey. S. A. Willes, a federal prohibition agent, testified that he was familiar with moonshine whiskey; that he smelled and tasted the liquor in question; and that in his opinion the liquor was moonshine whiskey and could be used as a bever-

age. The liquor was received in evidence and the jury were told that they may examine the same by smelling and tasting it. Counsel for the defendant has cited a number of cases wherein it is held that evidence was insufficient to support a finding that the liquor in question was intoxicating. All of those cases are readily distinguishable from the instant case.

The evidence in this case is ample to support a finding that the liquor in question was moonshine whiskey; that it was intoxicating and could be used as a beverage. Courts with substantial uniformity take judicial notice that whiskey is intoxicating. 15 R. C. L. 376, and cases there cited. The rule is founded upon the fact that whiskey is generally and properly known to be intoxicating. The same reason that forms the basis for judicial knowledge that whiskey is intoxicating applies to moonshine whiskey. Indeed, since the advent of prohibition, the latter product is probably better and more generally known than is the former. The latter terminology is generally applied to such whiskeys as are illegally manufactured. The fact that whiskey is characterized as moonshine does not deprive the courts from taking judicial notice of its character. There is sufficient evidence to support the verdict.

Defendant complains because Mr. Willes was permitted to express his opinion that the liquor in question could be used as a beverage. During the course of his examination he testified he was familiar with moonshine whiskey; that he smelled and tasted the liquor in question; that the liquor taken from defendant's automobile was ordinary moonshine whiskey; and it could be used as a beverage. Sufficient foundation was laid to qualify him to express an opinion as to whether or not the liquor could be used as a beverage. There was no error committed in permitting him to answer the question.

Defendant complains because the trial court refused to give to the jury two of his requested instructions. Such requested instructions read as follows:

Request No. 2. "You are instructed that before you can find the defendant guilty the state must prove by evidence to your satisfaction beyond all reasonable doubt that the liquid taken from the defendant, if you find any was taken from the possession of the defendant, was a liquid which could be safely used as a beverage. Such proof must appear positively in the evidence and not be based upon mere inference or opinion. And unless the state has so proved your verdict should be for the defendant, 'not guilty.' "

Request No. 3. "You are instructed that before you can find the defendant guilty the state must prove by evidence adduced in the case, and not merely by inference or opinion, that the liquid in plaintiff's exhibit C, was not only taken from the possession of the defendant, and that the defendant, prior to such taking, if any actually knew that the liquid was in his possession, but also that the liquid contained alcohol in excess of one-half of one per cent by volume which must appear by positive proof and not by inference or opinion; and if the state has not so proved, your verdict must be for the defendant, 'not guilty.' "

It will be noted that request No. 2 directs the jury to find the defendant not guilty unless the liquor which the defendant is charged with having in his possession could be safely used as a beverage. The law does not require the suggested degree of proof. One who has possession of moonshine whiskey with the intention of selling the same for use as a beverage is none the less culpable when its qualitiy is such that it may not be safely used as a beverage. Courts may take judicial notice not only that moonshine whiskey is intoxicating, but may likewise take judicial notice that it may be used as a beverage. If the jury believed the liquor in question was moonshine whiskey, as evidently they did, they were justified in finding, without additional proof of its character, that it could be used as a beverage.

The substance or request No. 3 was given to the jury. The court in one of its instructions set out the charging part of the information and stated to the jury that before they could find the defendant guilty of being a persistent violator of title 54, Comp. Laws Utah 1917, ■ they must find from the evidence to their satisfaction and beyond a reasonable doubt that all of the allegations of

the information were true, and that if they failed to so find they could not find the defendant guilty of being a persistent violator. The court also instructed the jury that before they could find the defendant guilty of the included offense of willfully, knowingly, and unlawfully having possession of intoxicating liquor they must find that the liquor in question was "moonshine whiskey containing more than one-half of one per cent alcohol by volume"; that they must find such facts to be true to their satisfaction and beyond a reasonable doubt; and that if they failed to so find they should render a verdict of not guilty. Defendant has no just cause to complain because the court refused to give his requested instructions Nos. 2 and 3.

Defendant filed a motion for a new trial. One of the grounds of the motion was that of "newly discovered evidence material to the defendant which he could not with reasonable diligence have produced at the trial." Affidavits were filed in support of the motion. In one of the affidavits one George Frank stated that on July 24, 1929, he saw J. D. Boyd and S. A. Willes near the automobile of the defendant on the state highway between American Fork and Pleasant Grove and that he saw Mr. Willes "draw a pint bottle from his right pocket, reach in the front of the said (defendant's) automobile and then immediately draw the identical bottle, or one of similar appearance from the front of said automobile and hold the same in plain view. That about fifteen minutes later said Deputy Willes came to the car of said affiant in American Fork, Utah, and this affiant asked said Willes, before he allowed him to approach his (affiant's) car, to give him the bottle he saw him (Willes) placing in the car of Arthur Hawkins." An affidavit of Sylvia Frank, wife of George Frank, was also filed in support of the motion for a new trial. In her affidavit she stated in substance that on July 24, 1929, while riding with her husband in their automobile from Pleasant Grove to American Fork she saw J. D. Boyd and S. A. Willes near the automobile of Arthur Hawkins; that soon after they

arrived in American Fork Mr. Willes came towards her husband's automobile; that as Mr. Willes approached the automobile her husband said to Mr. Willes, "Let me have the bottle I saw you put in Arthur Hawkins' car before you come any closer to mine. That immediately George Frank reached for the pocket of Mr. Willes and drew a pint bottle of liquor from Mr. Willes' pocket, and then allowed Mr. Willes to search his (George Frank's) automobile." The defendant Arthur Hawkins also filed an affidavit in support of his motion for a new trial. In his affidavit he alleged:

"I did not know that George Frank or Sylvia Frank whose affidavits are attached hereto in support of my motion for a new trial in the above entitled cause could or would testify to the matters set forth in their respective affidavits, at the time of the trial in the above entitled action. * * * That if granted a new trial in the above entitled cause the defendant will produce as witnesses in said trial the said George and Sylvia Frank who will testify to the matters set forth in the affidavits hereto attached."

In resisting the motion for a new trial, counter affidavits of S. A. Willes and J. D. Boyd were filed by the state. The affidavits of Mr. Boyd and Mr. Willes contain a restatement of the testimony which they gave at the trial, viz.: That they stopped Mr. Hawkins on the highway between Pleasant Grove and American Fork on July 24, 1929; that they searched his automobile; and that Mr. Willes found a bottle of moonshine whiskey in the front of defendant's automobile just behind his feet. Mr. Willes in his affidavit denied that a bottle was taken from his pocket by Mr. Frank and also denied that Mr. Frank stated in words or substance: "Give me the bottle I seen you put in Arthur Hawkins' car before you search mine." In his affidavit sheriff Boyd stated that Mr. Willes did not have a bottle in his hand when he reached into defendant's automobile. No claim is made on behalf of the defendant that the counter affidavits filed by the state should not be considered in passing on a motion for a new trial. There is a conflict in

the authorities as to whether or not the party opposing the granting of a new trial is entitled to file counter affidavits denying the truth of the facts stated by the newly discovered witnesses. 46 C. J. 390, and cases cited in note 11 on that page. Defendant, having failed to question the propriety of considering the counter affidavits filed by the State, we therefore refrain from expressing any opinion concerning the same. Moreover, in the main, the facts alleged in the state's counter affidavits were testified to at the trial. The authorities uniformly hold that evidence adduced at the trial may be considered by the court in passing upon a motion for a new trial upon the ground of newly discovered evidence.

A correct statement of what must be shown to warrant the granting of a new trial is contained in ■ 20 R. C. L. at page 290. It is there said:

"In order to warrant the granting of a new trial on the ground of newly discovered evidence, it must appear (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; (5) that it is not merely cumulative, or impeaching. Therefore it becomes necessary for the court to take into consideration the weight and importance of the new evidence, its bearing in connection with the evidence on the former trial, and even the credibility of the witnesses."

In its brief the state defends the order denying a new trial solely upon the ground that the newly discovered evidence is not such as will probably change the result if a new trial is granted. Before taking up the discussion of that phase of the motion there are two other ■ matters in connection with the motion that deserve notice. The only affidavit filed in support of the claim that the evidence of Mr. and Mrs. Frank was discovered after the trial is that of the defendant. It is the better practice and according to one line of authorities it is necessary that the claim that the evidence is newly discovered

must be supported by an affidavit of defendant's counsel as well as his own affidavit to that effect. The law is thus stated in Spelling, New Trial Appellate Practice, Vol. 1, p. 386, § 229:

"The evidence of the moving party and also that of his attorney, or of one of his attorneys where there are more than one, are usually required to fix the character of the evidence as newly discovered as well as to show diligence."

To the same effect is the statement of law contained in 46 C. J. § 425, p. 383. Cases dealing generally with the question will be found in the note to the above citation from Corpus Juris. There are cases which hold that a supporting affidavit of the attorney for the defendant is not necessary. Among such cases is that of *Boggess* v. *Read*, 83 Iowa 548, 50 N. W. 43.

The showing with respect to the diligence used by the defendant and his attorney to discover, before the trial, the evidence which it is claimed to be newly discovered is also meager. The only showing made in that respect is the statement in defendant's affidavit. He there ■ avers that he did not know that Mr. and Mrs. Frank "could or would testify to the matters set forth in their respective affidavits, at the time of the trial * * * and it was not until about the 14th day of February, 1930, that defendant, this affiant, learned of said facts." The affidavit does not advise the court of anything that he or his counsel did before the trial to ascertain what evidence was available for use at the trial, nor does he inform the court why or how it was that he discovered the evidence after the trial, but could not discover it before the trial. The law requires not only that the evidence relied upon in support of a motion for a new trial was not known before the trial, but also that it could not with reasonable diligence have been discovered and produced at the trial. Comp. Laws Utah 1917, Sec. 9199; *Salt Lake Investment Company* v. *Stoutt*, 54 Utah 100, 180 P. 182; *State* v. *Stewart*, 57 Utah 224, 193 P. 855.

Assuming, however, that the showing made was sufficient to bring the testimony of Mr. and Mrs. Frank within the rule of newly discovered evidence, may it be said ▮▮▮ the court below committed error in denying the motion? Is the testimony of Mr. and Mrs. Frank such as a reviewing court must say will probably change the results if a new trial is granted?

"It is the general rule that the granting or refusing of a motion for a new trial rests in the sound discretion of the trial court and that an appellate court will not disturb its action unless it appears that this discretion has been abused to the prejudice of the defendant." *State* v. *Weaver*, 78 Utah 555, 6 P. (2d) 167, 169.

Mrs. Frank in her affidavit does not purport to have any knowledge bearing upon the question of who had possession of the liquor at the time the alleged offense was committed. At most, her testimony could be used only for impeaching the witness Willes. A new trial will not be granted when the newly discovered evidence merely tends to impeach a witness. Moreover, most of the observations we shall make with respect to the affidavit of Mr. Frank apply equally to the affidavit of Mrs. Frank. There is no averment in the affidavit of Mr. Frank which tends to establish his credibility. It is silent as to his age, his citizenship, his interest or lack of interest in the action, his occupation, etc. He was a resident of Utah county, acquainted with the defendant, and knew where he resided. He claims to have seen "Sheriff Willes draw a pint bottle from his right pocket, reach in front of the said (Hawkins') automobile and then immediately draw the identical bottle, or one of similar appearance from the front of said automobile and hold the same in plain view." At the time he avers he saw that transaction he was riding in an automobile along the public highway. He knew Sheriff Boyd and Mr. Willes, and apparently knew that Mr. Willes was bent on mischief with respect to the bottle which he claims he placed in and removed from defendant's car, otherwise he would not have insisted, as he avers he did, that Mr. Willes give him the

bottle before his automobile could be searched. Notwithstanding Mr. Frank had every good reason to believe that Mr. Hawkins was being framed by the officers of the law, so far as appears, he made no effort to come to the rescue of Mr. Hawkins until after he had been convicted. It goes without saying that a public officer who unjustly seeks to convict a citizen of a felony ought to be exposed. Good citizenship demands that one possessed with knowledge that a public officer is guilty of such conduct owes a duty to society to see that he is exposed. No attempt is made in the affidavit of Mr. Frank to explain why he delayed, until after the defendant was convicted, to inform the defendant or his attorney of the strange and suspicious actions of Mr. Willes at the time in question. The trial court may well have believed that such testimony as is claimed to have been newly discovered would not, in the light of the testimony received at the trial, change the result of the former trial. We are not prepared to say that the trial court abused its discretion in denying the defendant a new trial.

The judgment is affirmed.

CHERRY, C. J., and STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.