GEORGE B. LEAVITT CO v. COUTURIER.

No. 5291. Decided July 12, 1933. (23 P. [2d] 1101)

258

*H. A. Belnap,* of Ogden, for appellant.

*Thatcher & Young,* of Ogden, for respondent.

ELIAS HANSEN, J.

Plaintiff brought this action in the city court of Ogden, Utah, to recover from the defendant $183.43, the balance alleged to be due and owing for ladies' shoes sold and delivered to the defendant by the plaintiff. Defendant denied that she was indebted to the plaintiff, and on the contrary alleged that she had overpaid the plaintiff the sum of

$76.38 for the shoes which were sold and delivered to her. She prayed judgment against the plaintiff for the amount of such alleged overpayment. The trial in the city court resulted in a judgment in favor of the defendant. From that judgment the plaintiff appealed to the district court of Weber county, Utah. The trial in the district court resulted in a judgment against the defendant. From the judgment rendered in the district court defendant has prosecuted an appeal to this court. Plaintiff has also appealed from an order of the district court whereby defendant was relieved from her failure to keep alive the time in which to prepare, serve, and file her bill of exceptions. By cross-assignments of error plaintiff seeks a review of that order, and because of the alleged error of the district court in relieving defendant of her default in such respect has moved this court to strike her bill of exceptions.

Touching the procedure had in the district court with respect to the settlement of defendant's bill of exceptions, the record before us discloses the following facts: On August 18, 1931, defendant's motion for a new trial was denied. On August 22, 1931, plaintiff served notice of the overruling of the motion for a new trial. On October 9, 1931, defendant filed a motion supported by affidavits asking that she be granted until December 22, 1931, in which to prepare, serve, and file the bill of exceptions. The only evidence offered in support of the motion was the affidavits attached thereto. After a hearing was had upon the motion, the district court made and entered findings of fact which were in substance the same as the averments in the affidavits. The court found:

"That Mr. LeRoy B. Young's stenographer came to the office of Hyrum A. Belnap on August 22, 1931, with a copy of a Notice of Denial of a Motion for a New Trial in the above matter, and, not finding Mr. Belnap there she left it with Atty. John A. Hendricks' stenographer in a room next to that occupied by Mr. Belnap, which room was the joint waiting room of Mr. John A. Hendricks, L. A. Wade and Hyrum A. Belnap. That said stenographer put the said notice on Mr. Belnap's desk together with some other papers but that Mr. Bel-

nap did not come to his office, Mr. Belnap did not see the Notice, and did not get actual notice of the denying of said motion for a new trial by the serving of a written notice upon him at all. That said notice was first called to his attention when Mr. Young came to Mr. Belnap's office on Oct. 6, 1931, and asked him if he was going to appeal the case and told him of the notice that had been left with Mr. Hendricks' stenographer.

"That Mr. Belnap's failure to hunt among his papers to find said written notice was due to his mistake, inadvertence, and excusable neglect."

The court ordered that defendant be "given to and including the 22nd day of December, 1931, within which to prepare, serve, and file her Bill of Exceptions." It is the settled law in this judisdiction that a district court may, pursuant to the provisions of Comp. Laws Utah 1917, § 6619, upon proper application and showing, relieve a party from default in failing to keep alive the time in which to prepare, serve, and file a bill of exceptions. *Morgan* v. *Oregon S. L. R. Co.*, 27 Utah 92, 74 P. 523; *Davis* v. *Lynham;* 67 Utah 283, 247 P. 294. The failure of defendant's counsel to sooner discover the notice may be said to be an inadvertence within the meaning of Comp. Laws Utah 1917, § 6619. The district court did not abuse its discretion in relieving the defendant of her default in failing to have her bill of exceptions served and filed within the time prescribed by Comp. Laws Utah 1917, X 6969. The motion to strike defendant's bill of exceptions is denied.

Defendant assigns as error the ruling of the district court in denying her motion to dismiss the appeal from the city court to the district court. Plaintiff served and filed its notice of appeal to the district court from the judgment rendered in the city court on July 1, 1930. The undertaking on that appeal was filed on July 7, 1930. Our statute directs that within five days after the filing of notice of appeal from the judgment rendered in a justice court to the district court the appellant shall file an undertaking on appeal. Comp. Laws Utah 1917, § 7517. Appeals

may be taken from judgments rendered in a city court in the same manner as is provided by law for appeals from justice courts in like cases. Laws of Utah 1919, c. 34, § 1713. An appeal from a judgment rendered in a justice or city court to the district court shall be dismissed when the "notice of appeal was not served and filed within thirty days after notice of rendition of judgment. * * * An appeal may be dismissed, on notice, in the discretion of the court, for either of the following causes: * * * 2. That the undertaking was not filed within five days after the filing of notice of appeal." Comp. Laws Utah 1917, § 7520. It will be observed from a reading of the statute just quoted that while the serving and filing of a notice of appeal within the time specified is mandatory, the failure to file an undertaking within the time fixed may, in the discretion of the district court, be excused. Such is the holding of this court. *Christensen* v. *Christensen,* 52 Utah 253, 173 P. 383, 4 A. L. R. 641; *Levy* v. *District Court,* 61 Utah 519, 215 P. 993. In the instant case the undertaking was filed only one day late and was so filed before defendant made her motion to dismiss the appeal. The district court did not abuse its discretion in refusing to dismiss the appeal.

It is alleged in the complaint and admitted in the answer that defendant purchased from plaintiff shoes of the invoice price of $2,568.11. As a defense to the action for the balance of the purchase price of the shoes and as a basis for her counterclaim of $76.38, defendant alleged that she returned defective shoes for which she should have been given credit for $24.95 and that 190 pairs of the shoes which were sent to her were defective, and because of such defect the plaintiff agreed to reduce the price of such defective shoes from $662.36 to $427.50, which latter amount was the reasonable value of the 190 pairs of defective shoes. In support of her defense to plaintiff's action and of her counterclaim defendant offered in evidence a letter written by S. D. McNaghten to the Diamond Shoe Store which reads as follows:

"Diamond Shoe Store
  "Salt Lake Utah
"Friend Christensen

   "Have been unable to get my telegrams to factory so they understand them. But it will be satisfactory $2.25 pair as per our conversation in your store. Also told factory of your adjusting the 3 prs. returned. So if you will have Economy send in check at that rate I personally will appreciate it.

    "Yours truly               S. D. McNaghten."

   Plaintiff objected to the admission of the letter in evidence upon the ground that it was incompetent, in that there was no evidence that showed, or tended to show, that McNaghten had authority from his principal to reduce the price of the shoes. The objection was sustained. Such ruling is assigned as error. Touching the nature and extent of the authority of Mr. McNaghten to bind the plaintiff the evidence tends to show: That Mr. McNaghten was a traveling salesman for the plaintiff; that he solicited orders from shoe dealers; that the Mr. Christensen to whom the letter in question was written was a brother of the defendant; that he purchased shoes for the Diamond Shoe Store which he conducted at Salt Lake City, and also for the Economy Sample Shoe Store which was conducted by the defendant in Ogden, Utah; that the shoes which form the subject-matter of this litigation were ordered by Mr. Christensen from Mr. McNaghten for the Economy Sample Shoe Store; that Mr. Christensen wrote to plaintiff complaining of some of the shoes which were sent to him as well as the shoes in controversy; that under date of May 10, 1926, plaintiff wrote Mr. Christensen that:

   "We got in touch with Mr. McNaghten after receipt of your shoes and as he informed us he was shortly starting on a trip decided to let him see you about same; in passing we can only say that the tests made here don't show anything wrong with the shoes."

   It is further made to appear that correspondence was had between the plaintiff and the defendant concerning the

shoes in question. Under date of April 15, 1926, plaintiff company wrote to the defendant that "any pairs that show * * * fault to an objectionable degree you are privileged to return." A few pairs were returned and defendant given credit therefor. On May 6th and again on May 24, 1926, plaintiff wrote to defendant informing her that her account was overdue and urging payment thereof. On May 26, 1926, defendant wrote plaintiff that Mr. McNaghten had agreed to accept $2.25 per pair for 190 pairs of the shoes theretofore sent to defendant by the plaintiff, and that therefore she was entitled to credit of $234.86 upon her account and requested that she be so credited. On June 28, 1926, defendant again wrote plaintiff stating that she had overpaid the plaintiff for the shoes purchased by her and requested the plaintiff to remit the sum of $60.80, the amount so overpaid. Plaintiff did not answer either the letter written on May 26th or that written on June 28, 1926. Its manager testified that plaintiff did not receive the letter of May 26, 1926, and that he did not deem it necessary to answer the letter of June 28, 1926, because he had already informed the defendant that if the shoes were unsatisfactory she might return the same.

"The apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority." 2 C. J. 574.

Numerous cases supporting the text just quoted are collected in a footnote. A traveling salesman is presumed to be employed to contract sales and has no implied power after a sale has been made to modify the contract. There is no presumption from the mere authority to sell that the agent has authority to rescind or modify the contract of sale. *American Sales Book Co.* v. *Whitaker,* 100 Ark. 360, 140 S. W. 132, 37 L. R. A. (N. S.) 91; *Brigham* v. *Hibbard,* 28 Or. 386, 43 P. 383; *Tynan Lumber Co.*

v. *W. A. Hammond Co.*, 124 Cal. App. 159, 12 P. (2d) 45. When at the trial the defendant offered in evidence the letter dated May 22, 1926, from Mr. McNaghten to Mr. Christensen, there was no evidence before the court which showed, or tended to show, that Mr. McNaghten had any authority to bind his principal other than that incident to his duties as a traveling salesman. There is nothing in the language of the letter written by plaintiff on May 10, 1926, which may be said to imply that Mr. McNaghten had authority to reduce the price of the shoes in question. The mere fact that Mr. McNaghten was directed to see Mr. Christensen about the shoes does not justify the conclusion that he was given any authority to alter the contract with respect to the price thereof. The objection to the admission of the letter of May 22, 1926, was properly sustained.

It appears that plaintiff secured the deposition of Frederick P. Liberty, the president and general manager of the plaintiff company. Apparently the deposition was duly published. Soon after counsel for the plaintiff began reading from the deposition, counsel for the defendant interposed the following objection:

"I object to the introduction of this deposition because it is not shown that it was taken in accordance with the Laws of Utah for 1917, in that it is not shown that it was taken on the particular date when it should have been taken and then from day to day thereafter successively; but it does appear on the record that they met that first day and took some testimony, and that they met some other time and we don't know when it was. We therefore make the objection to the entire deposition. It appears from the deposition that the witness appeared on the date in question and was asked several questions; and then it does not appear when the other was taken or whether it was properly postponed successively from day to day as the statute requires, or what happened."

If defendant had an objection to the sufficiency of the certificate attached to the deposition, she should have raised such objection by a motion to suppress the deposition at the earliest opportunity and in any event before the cause came on for trial. 18 C. J. § 381, p. 754.

"Where the objection to a deposition is of such a character that it can be made the subject of a motion to suppress the deposition, and no notice to suppress is made, but the deposition stands unobjected to until the trial, such objection cannot be made for the first time at the trial, but must be considered as waived."

The foregoing quotation is taken from the syllabus and reflects the opinion in the case of *American Publishing Co. v. C. E. Mayne Co.*, 9 Utah 318, 34 P. 247. Moreover, neither the deposition nor the commissioner's certificate were received in evidence and they are not brought here for review. In the absence of an opportunity to inspect the certificate, we may not presume that it was defective. Appellant must fail in her claim that the trial court erred in admitting in evidence the contents or a part of the contents of the deposition.

At the trial defendant offered to show that the market value of the shoes in question was $2.25 per pair. Objection was made to the offer and the objection sustained. Error is assigned because of that ruling. It is urged on behalf of appellant that the value of the shoes here involved being an issue, evidence with respect thereto should have been received. Defendant's answer contains two so-called counterclaims. The first counterclaim alleges a contract whereby defendant agreed to pay and plaintiff agreed to accept $427.50 for the 190 pairs of shoes involved in this controversy. In what is designated as the second counterclaim defendant alleged:

"1. That the plaintiff company is a New Hampshire corporation.

"2. That in 1926 defendant ordered from the plaintiff company 190 pair of black satin and blonde kid shoes invoiced at $662.36, which was part of the goods shipped from the plaintiff company to this defendant and contained a debit in plaintiff's Bill of Particulars.

"3. That said shipment of goods or 190 pair of shoes were defective and not worth the sum of $662.36 but were only worth the sum of $427.50, and defendant is entitled to a credit of $234.86 on said shipment.

"4. That the reasonable value of said shoes was $427.50."

The foregoing allegations were denied by plaintiff in its reply. It is alleged in the complaint and admitted in the answer that the invoice price of the shoes was the price agreed upon. It would seem clear that the foregoing allegations in defendant's second counterclaim do not state sufficient facts which, if true, would entitle her to any relief. The mere fact that the shoes which were invoiced at $662.36 were worth only $427.50 does not entitle defendant to a credit of $234.86. There is nothing in the language contained in the second counterclaim which indicates that plaintiff was guilty of any breach of warranty as to the quality of the shoes or that any fraud was perpetrated upon her by the plaintiff. It being admitted that the contract price of the shoes was the same as the invoice price and that defendant received the shoes, the fact that they were defective and worth less than the agreed price could be of no avail to the defendant in the absence of some additional fact or facts constituting a legal excuse for her failure to pay the contract price. Had the evidence of the value of the shoes been admitted, no relief could have been granted the defendant upon her so-called second counterclaim because the same is fatally defective. So far as appears from the allegations contained in the second counterclaim, defendant received all she bargained for. No prejudicial error therefore could be predicated upon the refusal of the trial court to receive evidence touching the reasonable market value of the shoes in question.

Error is also assigned because the trial court refused defendant's motion for a new trial. The motion was based upon all of the statutory grounds. An affidavit of Mr. McNaghten was filed in support of the motion. In his affidavit Mr. McNaghten averred that he made a settlement with the agent of the defendant as stated in his letter to Mr. Christensen under date of May 22, 1926, and that he was authorized by the plaintiff company to make such settlement, and that he would so testify. On the motion for a new trial no showing was made by affidavit

or otherwise why Mr. McNaghten was not produced at the trial. Under such circumstances, it may not be said that the court below abused its discretion in refusing to grant a new trial. *Salt Lake Inv. Co.* v. *Stoutt,* 54 Utah 100, 180 P 182; *State v. Stewart,* 57 Utah 224, 193 P. 855; *State* v. *Hawkins* (Utah) 16 P. (2d) 713.

The judgment is affirmed. In view of the fact that plaintiff has failed on its cross-appeal and cross-assignments of error and considerable of the printed matter of the briefs is devoted to a discussion of that question, we have concluded that neither party should be allowed any costs on appeal. Such is the order.

STRAUP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.