**2025 UT App 70**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JOSE MANUEL RAMOS,
Appellant.

Opinion
No. 20230644-CA
Filed May 15, 2025

First District Court, Brigham City Department
The Honorable Brandon J. Maynard
No. 201100021

Dylan T. Carlson, Debra M. Nelson, Benjamin Miller,
and Wendy M. Brown, Attorneys for Appellant

R. Renee Glosson, Attorneys for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES RYAN M. HARRIS and AMY J. OLIVER concurred.

LUTHY, Judge:

¶1 Jose Manuel Ramos was convicted of violating a protective order by sending prohibited text messages to his ex-wife (Ex-Wife). Following his conviction, Ramos moved for a new trial, arguing that evidence submitted with the motion showed that Ex-Wife testified falsely when she said she lacked access to Ramos's Apple account (also known as an Apple ID), thus implying that she could not have sent the messages to herself. The district court denied the motion based on its determination that the evidence Ramos submitted with his motion "could have been introduced at the trial." Ramos appeals and asserts that the district court abused its discretion by denying his motion. We disagree and affirm Ramos's conviction.

BACKGROUND

*The Protective Order*

¶2    Ramos and Ex-Wife married in 2016. Together they have one child (Child). They separated in June 2018 and were later divorced. In August 2018, Ex-Wife was granted a protective order against Ramos. Under the order, Ramos was instructed to "not contact, phone, or communicate in any way with [Ex-Wife] either directly or indirectly except for civil written communication about [Child]."

*Ramos's Violation of the Protective Order*

¶3    About a year after Ex-Wife obtained the protective order, Ramos sent her a series of text messages, over the course of about six weeks, that the State alleged violated the order. Ramos was subsequently charged with one count of violating a protective order. According to the charging document, the text messages "were intimidating, disparaging, uncivil, and unrelated to any issues pertaining to [Child]." The case proceeded to trial.

*The Trial*

¶4    At trial, Ex-Wife testified for the State. She identified the text messages and explained their context and contents. At 1:20 p.m. on the day of trial, after a lunch recess, Ramos's counsel began cross-examining Ex-Wife. Ramos's counsel asked Ex-Wife whether she had access to Ramos's Apple account, including specifically through an iPad that Child used. Ex-Wife testified that beginning in mid-2018, she no longer had access to Ramos's Apple account. She explained that "after August . . . 2018" she had "no more access" to Ramos's Apple account through Child's iPad because she or Ramos logged out of Ramos's account on that iPad and she took the iPad to the Apple store to verify that the iPad had been logged out of Ramos's account. When pushed as to whether she had testified differently in their divorce proceedings,

Ex-Wife explained further that when she went to the Apple store, she was shown that once a particular device has been logged in to a particular Apple account, that device continues to appear "in [a] list of devices that are connected to [that] account"—even if the device is later logged out of the account—until someone goes "into the setting[s] [of the account] and remove[s] [the device] from that list." Thus, she said, a particular device "could still show up on a list [of devices associated with a particular account] even after being signed out" of that account.

¶5    Ramos testified in his own defense, presenting an alternative explanation for the text messages, including a different version of who had access to his Apple account. He admitted to sending Ex-Wife a single text message that stated, "Reminder police station at 5:05 pm," an apparent reference to when and where he and Ex-Wife were to exchange Child that day. But he denied sending any of the other text messages. Instead, he claimed that for more than two months, someone else had been using his phone, email, and Apple account. He testified that he "fix[ed] phones" and was a former "Apple genius," in other words, a "tech for Apple"; that he "still [had his] Apple ID connected to [Child's] iPad to this day"; that because of that connection, someone else could have used Child's iPad to send text messages appearing to be from Ramos; and that he "kept on seeing [his] Apple ID being used somewhere else." Two other witnesses—Ramos's father and a woman who acted as an "intermediary between [Ramos] and [Ex-Wife]"—each testified that on occasion they had used Ramos's phone to send text messages to Ex-Wife.

¶6    During closing arguments, Ramos's counsel argued that the jury had "heard from [Ex-Wife] that she received [the text messages] from [Ramos], but there's no evidence that he was the one that actually sent them." The jury disagreed and convicted Ramos of the single count of violation of a protective order.

*Ramos's Motion for a New Trial and Appeal*

¶7      Ramos filed a motion for a new trial under rule 24 of the Utah Rules of Criminal Procedure. He argued that Ex-Wife had testified falsely when she told the jury that after August 2018 she no longer had access to Ramos's Apple account through Child's iPad. In support of this assertion, Ramos attached screenshots from his phone that he alleged showed that from at least 1:09 p.m. on the day of trial and until Ramos filed his motion, "[Child's] iPad [was] still connected through [Ramos's] Apple ID, because it [was] still on the list of devices under [Ramos's] Apple ID." Ramos also attached a declaration from "an expert witness" he is "acquainted with" that contained "an explanation of how [an] Apple ID works."

¶8      The district court denied the motion, reasoning that "it appear[ed] that both the [expert] witness and the screenshot could have been introduced at the trial and [that it] is unlikely [their inclusion would] . . . have resulted in a different verdict." Ramos now appeals.

ISSUE AND STANDARDS OF REVIEW

¶9      On appeal, Ramos contends that the district court "abused its discretion when it denied [his] motion for a new trial." "We review the denial of a motion for a new trial based on newly discovered evidence on the same basis as any other denial of a new trial motion—whether the trial court abused its discretion." *State v. Montoya*, 2004 UT 5, ¶ 10, 84 P.3d 1183 (cleaned up). "At the same time, however, we review the legal standards applied by the trial court in denying such a motion for correctness and the trial court's factual findings for clear error." *State v. Boyer*, 2020 UT App 23, ¶ 18, 460 P.3d 569 (cleaned up).

ANALYSIS

¶10 Under rule 24 of the Utah Rules of Criminal Procedure, "[t]he [district] court may . . . grant a new trial in the interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party." Utah R. Crim. P. 24(a). One basis upon which a rule 24 motion may be granted is the discovery of new evidence that warrants a new trial. *See State v. Montoya*, 2004 UT 5, ¶ 10, 84 P.3d 1183. The Utah Supreme Court long ago established a three-part test to determine whether newly proffered evidence warrants the granting of a new trial. *See State v. Weaver*, 6 P.2d 167, 169 (Utah 1931). Under that test, which continues to apply today under rule 24,

> [newly discovered] evidence must meet three criteria in order to constitute grounds for a new trial: (1) it must be such as could not with reasonable diligence have been discovered and produced at the trial; (2) it must not be merely cumulative; and (3) it must be such as to render a different result probable on the retrial of the case.

*Montoya*, 2004 UT 5, ¶ 11 (cleaned up); *accord State v. James*, 819 P.2d 781, 793 (Utah 1991); *State v. Gellatly*, 449 P.2d 993, 996 (Utah 1969); *Weaver*, 6 P.2d at 169.

¶11 One independent reason the district court cited for its denial of Ramos's motion was its determination—under the first prong of the foregoing test—that the evidence Ramos sought to introduce through his motion "could have been introduced at the trial." Ramos now argues that the court "incorrectly found that

the new evidence could have reasonably been prepared for trial."[1] We disagree.[2]

---

1. The State observes that in his motion for a new trial, Ramos "advanced no argumentation and cited no case law or rules establishing that any of [his] [d]eclarations or screenshots should be considered newly-discovered evidence." And it contends that because Ramos did not make such an argument in the district court, the issue he raises on appeal was not properly preserved. However, in response to Ramos's motion, the State itself recited the three-part test for determining whether newly discovered evidence warrants a new trial, and it argued—at least as to Ramos's expert witness's declaration—that the evidence Ramos submitted with his motion "cannot be considered newly-discovered evidence." The district court then denied the motion based on its determination that "both the [expert] witness and the screenshot could have been introduced at the trial." "[T]he main point of our preservation rules is to afford a trial court the opportunity to rule on a disputed issue, and where a trial court actually makes a ruling on an issue, it has had that opportunity." *State v. Florez*, 2020 UT App 76, ¶ 17 n.3, 465 P.3d 307. If the district court had "offered a simple one-word denial" of Ramos's motion, perhaps the State's position on preservation would have some weight. *Id.* But because the court denied the motion explicitly based on a determination that the evidence Ramos provided could with reasonable diligence have been introduced at trial, we conclude that the issue Ramos raises on appeal was preserved for our review. *See id.*

2. The other independent reason the district court gave for its denial of Ramos's motion was its determination—under the third prong of the test—that inclusion of the evidence Ramos submitted with his motion likely would not have resulted in a different verdict. Ramos challenges the court's ruling on this point as well.

(continued…)

¶12 Ramos submitted with his motion an exhibit containing screenshots of his phone that he alleges show that up to the day of trial and beyond, Child's iPad was still signed in to Ramos's Apple account. The fact that Ramos took one of these screenshots during trial—specifically, at 1:09 p.m., prior to Ex-Wife retaking the witness stand at 1:20 p.m. to be cross-examined—demonstrates that this evidence was discovered and with reasonable diligence could have been produced at the trial. And if Child's iPad had been logged in to Ramos's Apple account the whole time, as Ramos asserted at trial, then Ramos could have with reasonable diligence obtained similar screenshots before trial as well. Because the screenshot evidence on which Ramos relies plainly could have with reasonable diligence been discovered and produced at trial, the district court's finding to that effect was not clearly erroneous, and the court did not abuse its discretion by denying Ramos's motion for a new trial based on that evidence.

¶13 The same is true of the expert's declaration that Ramos produced with his motion. Ramos testified at trial that he "fix[ed] phones" and worked for a time as a "tech for Apple," implying that he understands how Apple accounts work. Then with his motion for a new trial, he asserted that he is personally "acquainted with" the expert whose declaration about how Apple accounts work he provided in support of his motion. Based on Ramos's preexisting knowledge of the key facts to which the expert would testify as well as Ramos's apparently ongoing acquaintance with the expert and the expert's knowledge, we cannot say that the district court clearly erred in finding that the expert's testimony could with reasonable diligence have also been discovered and presented at trial. Thus, the court did not abuse

---

Because we affirm the district court's denial of Ramos's motion based on one independent ground for its ruling, we need not address this other basis for its ruling.

its discretion in denying Ramos's motion for a new trial based on that evidence either.

¶14 Ramos resists the foregoing conclusions by arguing that "[i]t was not until [Ex-Wife] made her false statements at trial that the evidence proffered in the defense's motion for a new trial became necessary to dispel those statements" and, accordingly, that "even reasonable diligence would not have precipitated its preparation to be produced at trial." Ramos is mistaken. He was not in the dark about what his own defense was going to be—namely, that Ex-Wife and others had access to devices that were logged in to his Apple account and that one of those persons used one of those devices to send the text messages at issue. A defendant's reasonable diligence includes preparing to present basic evidence—including impeachment evidence—that supports his own anticipated theory of defense. The fact that Ramos decided not to prepare such evidence in advance of trial does not qualify the evidence as being newly discovered.[3]

## CONCLUSION

¶15 The district court did not abuse its discretion when it denied Ramos's motion for a new trial because the evidence Ramos proffered in support of the motion was not newly discovered. The evidence could with reasonable diligence have been discovered prior to and presented at trial. We therefore affirm Ramos's conviction.

_____

3. We do not mean for our holding in this case to foreclose the possibility that a defendant's *justified* failure to anticipate the need for certain evidence could make otherwise discoverable evidence undiscoverable for purposes of a new trial motion. But because Ramos's failure to anticipate the need for the evidence he proffers in support of his new trial motion was not reasonable, we do not attempt to resolve that potential legal issue here.